# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
June 7, 2018

No. 340366
St. Clair Circuit Court
Family Division
LC No. 15-000215-NA

*In re* G. L. RINGEISEN, Minor.

Before: SERVITTO, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

The circuit court terminated respondent-father's parental rights to his daughter, GLR, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to the parent). The record establishes that respondent failed to complete any tasks in his service agreement and infrequently visited his child. After more than two years of services, respondent still could not provide proper care and custody in a safe and suitable environment. Accordingly, we affirm.

## I. BACKGROUND

GLR was born to respondent and his girlfriend, Rebeka Wrightman, on July 19, 2011. Young GLR's life was chaotic. Her parents engaged in domestic violence in her presence on September 16, 2014. Moreover, Wrightman was an alcoholic and drug user who used while GLR was in her care. In October 2014, Wrightman placed GLR in a guardianship with her sister, Theresa Daugherty. Over Thanksgiving, respondent and his mother, with whom he lived, had a physical altercation. Ultimately, the Department of Health and Human Services (DHHS) filed a petition to take GLR into court supervision on January 15, 2015, as Wrightman had left the state and respondent had not seen the child since December 23. Daugherty and her husband were named as GLR's foster parents.

Respondent and Wrightman admitted grounds to take jurisdiction over GLR. From the beginning of the child protective proceedings, the caseworker noted respondent's anger. He immediately ignored the caseworker's directions to arrange parenting time sessions through her and then blamed GLR's maternal relatives for denying him access to his child. Respondent was also incarcerated for a month, allegedly for failure to pay child support. In a September 25, 2015 report, the caseworker recommended, among other things, that respondent complete an anger management program, a domestic violence program, and counseling. Despite that he was not incarcerated at that time, respondent did not appear at the

-1-

September 2015 hearing. The caseworker noted that respondent "doesn't seem to be interested very much in this and he's causing some trouble with all parties." The court thereafter adopted the caseworker's recommendations, ordering respondent to participate in various services.

Despite that he was notified of the proceedings, respondent failed to appear at hearings on December 28, 2015 and March 11, 2016. Respondent had spoken to the caseworker but would not provide his new address and did not ask about visiting GLR. Respondent declined to start ordered services. Respondent also did not appear at a May 20, 2016 hearing and had not contacted the caseworker in the meantime. When respondent appeared at a hearing on August 12, he claimed that he had been incarcerated again for nonpayment of support, explaining his absence. However, he then admitted that he was released in April. Respondent claimed that Daugherty had prevented him from visiting his daughter. He also did not understand that the court had already ordered him to participate in services, including anger management. At that hearing, the court specifically ordered respondent to participate in services and that he attend supervised visits at the DHHS given the family difficulties in this matter.

On October 16, 2016, GLR suffered 2nd and 3rd degree burns to 32% of her body in a household accident and was hospitalized at Children's Hospital in Detroit. Respondent visited his daughter at the hospital, but the staff expressed concern about his angry outbursts and negative comments. Respondent did not appear on October 21 when he promised to stay with his daughter overnight. Instead, respondent's mother and grandmother arrived, took pictures of GLR, and created a GoFundMe page seeking $50,000 to cover medical costs, despite that GLR's care was completely covered by insurance. Respondent arrived late to the October 28 hearing where these issues were discussed and "stormed out" midproceeding.

Respondent did not appear for a December 2, 2016 hearing and had not visited GLR in the hospital since the last hearing. Respondent was not returning the caseworker's calls and had not provided proof of employment or participation in services. The court ordered that after GLR's release from the hospital, she would be returned to Wrightman and her family. Respondent also did not appear for hearings on February 24 and May 19, 2017.

On June 16, 2017, the DHHS filed a supplemental petition seeking termination of respondent's parental rights. Respondent had not seen GLR in more than six months. The caseworker had difficulty keeping track of respondent; he changed his phone number frequently without alerting DHHS. Respondent had only provided proof of employment for one month during the lengthy proceedings. Respondent had completed no ordered services and continued to behave angrily and aggressively toward the caseworker and GLR's maternal family.

At the termination hearing, evidence was presented that respondent lived with his mother, a woman whom he had physically assaulted in the past. In addition, the caseworker indicated that the home was an unsuitable placement because it was flea infested. The caseworker observed over 10 parenting time sessions between respondent and GLR and observed nothing of concern at those times. However, respondent's visits were few and far between. The caseworker also had not heard from respondent since January 3, 2017.

Respondent contended that he had actually attended parenting classes, just not those to which the caseworker referred him. He admitted that he attended only one of eight classes, however, because he learned during a family team meeting that the DHHS intended to return GLR to her mother. Respondent further asserted that he attended eight anger management classes but he did not finish and earn a certificate. Respondent "got upset" and stopped calling the caseworker because he "figured [he] wasn't getting the acknowledgment that [he] was trying to follow through with the court's orders." He claimed he stopped participating in services because he "just felt like it wasn't going to benefit [him] any." Respondent described that he worked 60 hours a week at two jobs and took care of his mother who suffered from multiple sclerosis and fibromyalgia. Respondent did not explain why he failed to provide proof of continuing employment.

Despite repeated instruction to contact the caseworker to schedule parenting time sessions, respondent claimed that he had not seen GLR since December because her guardians would not allow it. Respondent did not contact the caseworker, he asserted, because nothing "ever gets done when [he] bring[s] it to her attention." Respondent did not raise these issues with the court because of his "legal issues with child support and everything like that."

Ultimately, the court terminated respondent's rights. He now appeals.

## II. STATUTORY GROUNDS

Respondent challenges the evidentiary support for the statutory grounds leading to termination. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). When termination is sought in a supplemental petition based on new grounds, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which state:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

-3-

* * *

  (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

  (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The record supports that the conditions that led to adjudication continued to exist long past the 182-day mark. Respondent continued to exhibit anger management issues throughout the proceedings. Respondent did not complete anger management or domestic violence programs and never attended counseling. Moreover, just as at the start of the proceedings, respondent still was not consistently visiting his daughter. And respondent had not found suitable housing. He was still living with his mother, and their prior history of domestic violence made the home an inappropriate placement. The DHHS made reasonable efforts to reunite respondent with his daughter, but he failed to meaningfully participate and show adequate benefit. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Accordingly, termination was supportable under factor (c)(*i*).

Termination was also supportable under factor (g). A "parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). The record is replete with examples of respondent's failure to participate in ordered services and refusal to deal with the caseworker so he could work toward reunification. Respondent's anger management issues and incidents of domestic violence with the women in his life left respondent unable to provide proper care and custody for his child. The failure to follow through with services means that this condition still exists and will not be rectified within a reasonable time.

The evidence supporting termination under factor (j) was not as strong. However, the DHHS was not required to prove that termination was supportable under this ground as only one ground was required. Overall, respondent has not established that the court's termination decision was based on inadequate evidence.

### III. BEST INTERESTS

Respondent further contends that termination of his parental rights was not in GLR's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-

357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *White*, 303 Mich App at 714. Termination may be in the best interests of the child, even where a parent and child are bonded, if there is "a serious dispute on the record" regarding whether the parent has a "healthy bond" with the child. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2001), overruled in part on other grounds by *In re Sanders*, 495 Mich 394, 422-423 (2014).

GLR has been in the care of her maternal relatives for more than half of her life. Because of her serious burns, GLR will require intensive care going forward. GLR requires therapy twice a week, laser surgery every three months, must wear burn garments 22 hours a day, and must use special lotions, oils, and a face mask to help her heal. The child's relatives have been providing that care so far. As respondent stopped visiting GLR after her hospital release and has not been involved in her recovery, he has never learned how to provide for her. Instead, respondent has gone through these proceedings angry and resentful, ignoring what his best for his child and choosing not to participate because he did not get enough pats on the back. Given his failure to participate, respondent will be unable to provide a safe home for GLR any time in the near future and the child requires a stable and permanent home. On this record, the trial court did not err in finding that termination of respondent's parental rights was in the child's best interests.

We affirm.


/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens

-5-