# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* BUTLER/ALLEN, Minors.

UNPUBLISHED
August 14, 2018

No. 341862
Kent Circuit Court
Family Division
LC No. 16-051558-NA;
          16-051559-NA;
          16-051560-NA

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her three children—CB, SA, and DA—under MCL 712A.19b(3)(c)(*i*) and (g). Respondent challenges the evidentiary support for the statutory grounds underlying the termination decision and the court's conclusion that termination was in the children's best interests. She also challenges the efforts of the Department of Health and Human Services (DHHS) to find a relative placement for her children. We discern no error and affirm.

## I. BACKGROUND

Respondent has a long history with Child Protective Services (CPS). In 2010, CPS substantiated a complaint of domestic violence in the home respondent shared with the father, Lashoun Allen, of SA and DA. In 2012, CPS substantiated a second complaint against respondent as she tested positive for cocaine while pregnant with DA. In 2015, respondent was again substantiated for domestic violence and substance abuse and as a result, she ended her relationship with Allen. The court subsequently terminated Allen's parental rights.

On January 13, 2016, respondent was arrested for gross indecency. At that time, respondent placed her eldest child, CB, with the child's biological father. On April 1, respondent was evicted from her residence. On April 29, a CPS investigator came to inspect respondent's new home. She found respondent under the influence of narcotics; respondent's eyes were glassy, she slurred her words, and she repeatedly invaded the investigator's personal space. Respondent refused a drug test and the CPS took SA and DA into care. CB's father was subsequently arrested for methamphetamine production and CB was placed in the care of her paternal great-grandmother. This relative was unable to provide long-term care and CB was transferred into a nonrelative foster placement.

-1-

Respondent's children were eventually reunited within a single foster home. In the meantime, respondent was required to engage in substance abuse therapy, continue treatment for mental health issues, attend parenting classes, find employment, and end her relationship with her abusive partner, Leon Hall. Respondent's participation in services was lackluster at best.

Throughout the proceedings, respondent continued to use cocaine and marijuana. When respondent did submit to drug screens, she tested positive for these drugs as well as for medications for which she had no prescription. Respondent eventually stopped appearing for drug screens because she felt termination of her parental rights was inevitable. Respondent eventually obtained a medical marijuana card, but did not purchase her marijuana from a licensed caregiver. Respondent also lied about her need for medical marijuana, claiming at one point to have colon cancer, but later asserting that she suffered from diverticulitis. Respondent never provided documentation for any medical condition.

Respondent also did not follow through with mental health counseling. Respondent self-reported being diagnosed with bipolar disorder, anxiety, post-traumatic stress disorder, and antisocial personality disorder. The DHHS offered respondent counseling services, but she rarely attended. Although respondent claimed that she was taking prescribed psychotropic medications, those medications never showed up on her random drug screens.

Respondent eventually ended her relationship with Hall and moved into a domestic violence shelter in another city. Early in the proceedings, however, respondent lied to the caseworker while she continued to live with Hall. Respondent attended a parenting time session with a black eye after Hall hit her. Moreover, respondent continued to insist that Hall had been a positive father figure for her children because he did not hit the children, only her.

Respondent remained in the domestic violence shelter through the termination hearing. She lost her chance at low-income housing by forging a letter from the foster care agency stating that she had unsupervised visits with her children. Respondent claimed that she was disabled from work and was awaiting approval of disability benefits. Her doctor, however, indicated that she suffered from no condition that disabled her from work. At the termination hearing, respondent indicated that she was eligible for a rent assistance program that would pay her rent for six months until her disability benefits were approved.

Respondent did regularly attend parenting time sessions throughout the proceedings and exhibited a strong bond with her children. Respondent also attended some parenting classes. Respondent did not benefit from the classes, however, and continued to have difficulty managing the children during visits. She used profanity in front of the children, leading DA to complain to the foster care worker. Respondent once gave the children Mountain Dew during a visit because she knew it would make them sick and their foster parents would have to deal with the fallout. On another occasion, respondent lied to the children and told them she was pregnant. Respondent also exhibited a lack of patience, was easily frustrated, and frequently yelled at the children during visits.

After more than 18 months of services, the DHHS sought termination of respondent's parental rights in a supplemental petition. The court found that respondent had not rectified the conditions that led to adjudication or provided proper care and custody for her children. Given

respondent's poor response to services, the court found it unlikely that respondent would be able to care for her children within a reasonable time. Accordingly, the court terminated respondent's parental rights.

## II. RELATIVE PLACEMENT

Respondent first challenges the DHHS's efforts to find a relative placement for her children. Had the children been placed with a relative, respondent asserts, the court may not have found termination of her parental rights to be in the children's best interests.

MCR 3.965(D) mandates the court in a child protective proceeding to "direct the agency to identify, locate, and consult with relatives to determine if placement with a relative would be in the child's best interests, as required by MCL 722.954a(2)." The statute in turn gives the foster care agency 30 days to "identify, locate, notify, and consult with relatives to determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs."

The circuit court and the DHHS fulfilled their duties in this case. Respondent gave the DHHS contact information for her father and stepmother. Respondent's stepmother was awarded monthly visits with the children. The maternal grandparent's home was deemed an unfit placement, however, as respondent's father was an alcoholic. Respondent orally identified other relatives for possible placement, but did not complete forms provided by the DHHS to gather these relatives' contact information. The DHHS notified several paternal relatives of SA and DA of the proceedings and forwarded these individuals paperwork to start background checks. None returned the forms. The DHHS conducted the necessary investigation and cannot be faulted for the lack of relatives willing and able to give the children a permanent home.

## III. STATUTORY GROUNDS

Respondent also challenges the evidentiary support for the statutory grounds underlying the court's termination decision. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). When termination is sought in a supplemental petition based on new grounds, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The circuit court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (g), which at the time of these proceedings provided:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

Clear and convincing evidence supported that the grounds that led to adjudication continued to exist by the time of the termination hearing and that respondent would be unable to rectify those conditions within a reasonable time. Respondent continued to test positive for cocaine as late as August 2017, four months before the termination hearing. Respondent expressly declined to submit to drug screens in the fall of 2017, and the missed tests are deemed positive. Respondent continued to use marijuana medicinally, against the advice of her substance abuse counselor, and to purchase the marijuana illegally from someone other than a licensed medical marijuana caregiver. Given her continuing substance abuse, it was unlikely respondent could overcome that obstacle within a reasonable time.

Respondent had not adequately addressed her mental health issues. Respondent self-reported suffering from multiple conditions and lied about taking prescribed medications. Respondent finally participated in a psychiatric evaluation one month before the hearing, but failed to sign the necessary release for the information to be shared with the caseworker. Without knowing what conditions respondent suffered from, the court could not find that respondent would overcome those conditions within a reasonable time.

---

[1] MCL 712A.19b(3)(g) was amended effective June 12, 2018. See 2018 PA 58. The new statutory provision states: "The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

Respondent had ended her abusive relationship with Hall and had moved into a domestic violence shelter. Hall was not respondent's first abusive partner, however. Respondent continued to lack insight into how her abusive relationships affected her children. For example, respondent came to a parenting time session with a black eye. She also reported that Hall had been a good father to her children. Although this condition was rectified at that moment in time, there was a strong likelihood that respondent would find herself in similar abusive relationships in the future, placing her children in further danger. Termination was therefore supportable under factor (c)(*i*).

The evidence supporting termination under factor (c)(*i*) also supports termination under factor (g). Respondent continued to be unable to provide a safe and stable home for her children and to otherwise meet their needs. When the children came into care, respondent was unemployed and living with an abusive boyfriend. She contended that she was disabled from working, but lied about the nature of her physical ailments. Respondent also failed to release information from her psychiatric evaluation. Respondent's primary care physician contradicted respondent's claims, asserting that she suffered from no condition that prevented her from working. Respondent's lack of income limited her housing options. Respondent presented forged documents to a government agency, disqualifying herself from low-income housing. Respondent claimed that she was eligible for six months of rent assistance through the domestic violence shelter, but provided no evidence of this claim. Moreover, respondent intended to rely on the rent assistance until her application for disability benefits was granted, an outcome of which respondent could not be certain. Accordingly, respondent had no plan to provide proper care and custody for her children after more than 18 months of services, supporting termination on this ground as well.

## IV. BEST INTERESTS

Finally, respondent contends that termination of her parental rights was not in her children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The advantages of the child's foster placement over placement with the parent are a relevant consideration. *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). The best interests of the children take precedence over the best interests of the parent. *Moss*, 301 Mich App at 89.

We discern no error in the circuit court's conclusion that termination of respondent's parental rights was in her children's best interests. Respondent correctly notes that the children were bonded with her. CB was most strongly bonded with her mother, while respondent's bond

with young DA was strained. But a parent-child bond standing alone is insufficient to overcome the best interests of the children. Here, all other factors favored termination.

Respondent had not complied with her services plan to overcome the various grounds bringing the children into care. She continued to abuse cocaine and likely used medical marijuana inappropriately, limiting her ability to safely supervise her children. Respondent's ability to safely care for her children was further hindered by her failure to adequately address her mental health issues. The children had witnessed domestic violence against their mother with at least two prior partners and respondent failed to complete services to prevent the cycle of violence in the future. Moreover, respondent did not benefit from parenting classes as evidenced by her continued inability to manage the children during parenting time sessions.

The children were placed together in a home with foster parents who were interested in adopting them. Given their chaotic childhood, the children required permanence, stability, and finality. Respondent had demonstrated an inability to provide these things. Termination was therefore in the children's best interests.

We affirm.

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica