# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. D. Ashburn, Minor.

UNPUBLISHED
December 11, 2018

No. 343080
Macomb Circuit Court
Family Division
LC No. 2017-000003-NA

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her young daughter, MDA, after a 15-month child protective proceeding for failure to adequately participate in and benefit from services. Respondent challenges the factual findings underlying the court's ruling. We discern no error and affirm.

## I. BACKGROUND

In early December 2016, Child Protective Services removed respondent's five-year-old daughter, EZ, from her care due to physical abuse, neglect, and substance abuse. CPS had intervened with respondent's family several times since her daughter's 2011 birth based on respondent's arrests for domestic violence, untreated mental health issues, and substance abuse. The Department of Health and Human Services placed EZ with her father, who eventually was awarded sole custody in family court. No court has terminated respondent's rights to EZ.

On December 28, 2016, respondent gave birth to her second child, MDA. MDA tested positive for cocaine and opiates at birth and remained hospitalized during treatment for withdrawal symptoms. After MDA's release, she was placed in nonrelative foster care near respondent's Macomb County home. MDA's father signed an acknowledgment of paternity shortly after her birth and began participating in services. As of the filing of this appeal, it appeared that MDA's father would soon earn custody of his child.

In January 2017, the DHHS referred respondent for a psychological evaluation, counseling, a CARE assessment, drug screens, substance abuse therapy, infant mental health services, and supervised visitation. From the start, respondent failed to appear for drug screens and she delayed in scheduling and attending intake appointments for services. Respondent did not regularly attend supervised parenting time sessions at the Macomb County DHHS office. An April 12, 2017 report noted that respondent had attended only five out of 11 visits.

-1-

By May 4, 2017, respondent had submitted to a psychological evaluation. Respondent made excuses for her children being in care and denied any drug use. The evaluator diagnosed respondent as having "borderline intellectual functioning" and with moderate "persistent depressive disorder." He recommended parenting classes, drug testing, supervised visitation, and "supportive psychotherapy." However, respondent was still noncompliant with drug testing and had not arranged a substance abuse therapy intake appointment. Respondent had attended only six out of 13 visits with MDA. Respondent blamed her attendance issues on her lack of transportation and was given bus passes. To her credit, respondent secured employment at a retail establishment.

Despite her documented lack of compliance from the onset of the proceedings, respondent now contends that events occurring in June 2017 stymied her progress. That month, MDA's paternal great-grandparents took custody of the baby, moving her from Macomb County to Dearborn. Respondent's grandmother also became gravely ill, and ultimately passed away in November. Respondent contends that as she relied on family members for rides, these events limited her transportation pool. Respondent also asserts that the paternal great-grandmother was hostile and made visits uncomfortable.

Between May and September 2017, respondent visited MDA only three times. Respondent missed all but one random drug screen, at which she tested positive for Hydrocodone and Tramadol. Although respondent claimed to have prescriptions for these medications, she provided only one 30-day prescription for Tramadol during the proceedings. Respondent refused to take a drug test when asked at an August 24, 2017 review hearing. Respondent did not begin substance abuse counseling or individual therapy, repeatedly cancelling appointments. Respondent also did not enroll in court-ordered parenting classes.

The DHHS then referred respondent to Orchard Family Services, which would provide hands-on parenting coaching during visits as well as free transportation to the visits. Respondent was terminated from the program on October 28, 2017, for lack of participation. Although respondent visited MDA on September 29, 2017, she attended no further visits before a December 21 hearing. She again failed to appear for any drug screens and again cancelled intake appointments for counseling and substance abuse treatment, resulting in her termination from that service provider. While respondent remained employed, she had been living in the homes of relatives who would not allow the DHHS to enter for a home study.

Respondent now contends that after her grandmother's death in November 2017, her family members were better able to provide her transportation and she made renewed efforts to comply with her case service plan. Yet, respondent did not start parenting classes until January 30, 2018, more than a year into the proceedings. She missed too many sessions and was removed from the program. Respondent completed an intake appointment for mental health and substance abuse therapy on December 26, 2017. She scheduled and canceled several therapy sessions, attending only one group session on January 11, 2018, and one individual session on January 16. Respondent did not visit MDA for Christmas or her birthday but did spend 1.5 hours with her daughter on January 1. Respondent attended no further visits in January. Respondent continued to avoid drug testing into the new year.

Ultimately, the DHHS filed a supplemental petition seeking termination of respondent's parental rights on December 26, 2017, and after a three-day termination hearing, the court terminated her rights on March 13, 2018. During this time, respondent attended a parenting time session at MDA's great-grandparents' home. Respondent and her grandfather, who accompanied her, described that MDA was loving and affectionate toward her mother and did not want her mother to leave. The great-grandmother and the caseworker painted a different picture, however. Respondent spent a significant amount of time using her cell phone and did not react when MDA fell and bumped her head. The caseworker denied that MDA showed any distress, or even any reaction, when respondent left. The caseworker also never observed any hostility from the great-grandmother toward respondent, challenging respondent's credibility in this regard.

Respondent now appeals the termination decision, claiming that the circuit court relied on a skewed version of the evidence, undermining the statutory and best-interest interest findings.

## II. STATUTORY GROUNDS

Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). When termination is sought in a supplemental petition, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which at the time of the termination hearing provided:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.[1]

Although these proceedings were short, respondent was given well over 182 days to rectify the conditions that led to adjudication. The main conditions that led to adjudication were respondent's untreated mental health and substance abuse issues. Respondent did not begin counseling for these issues until January 2018, after the termination petition had been filed. Even then, she attended only one group and one individual session. Respondent persistently failed to participate in random drug screens during these proceedings, and when she did, she tested positive for prescription medications. Although respondent claimed to have valid prescriptions for these drugs, she provided only one 30-day prescription form. Termination is appropriate under factor (c)(*i*) when the respondent has "not accomplished any meaningful change in the conditions existing [at] the time of the adjudication." *Williams*, 286 Mich App at 272. The parent must participate in and benefit from services to demonstrate her ability to safely parent her children. *In re Gazella*, 264 Mich App 668, 676; 692 NW2d 708 (2005). As respondent made little attempt, she could show no benefit and could not demonstrate that she would be able to safely parent MDA within a reasonable time.

Similarly, termination was supportable under factor (g). Respondent had never provided any care or custody for MDA. Although she had secured employment, respondent had achieved no other goal to ensure her ability to provide proper care and custody in the future. Only on the eve of the termination hearing did respondent attempt to comply with her court-ordered services plan, and even then, respondent's participation was minimal to nonexistent. Given her failure to follow through with services, it is unlikely respondent would be able to provide proper care or

---

[1] Effective June 1, 2018, subsection (g) provides:

The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [See 2018 PA 58.]

custody for MDA in the future. As termination was supported under factors (c)(*i*) and (g), we need not speculate whether MDA would be in harm's way if placed in respondent's care.

## III. BEST INTERESTS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The advantages of the child's foster placement over placement with the parent are a relevant consideration. *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). However, a child's placement with relatives weighs against termination, MCL 712A.19a(6)(a), and the court must expressly consider the child's relative placement in making its best-interest determination. *Olive/Metts*, 297 Mich App at 43.

Respondent contends that termination of her parental rights was not in MDA's best interests, noting that the court had not terminated her parental rights to her older daughter when she was placed in her father's care and MDA would similarly be placed in her father's care. However, in child protective proceedings, the court must consider the best interests of each child individually. *Olive/Metts*, 297 Mich App at 42. EZ's father was ready and able to care for his child as soon as EZ was removed from respondent's care. In a separate custody matter, the family court granted the father sole custody of EZ. EZ's best interests were protected in that proceeding and the family court could exercise continuing jurisdiction in the custody action. In this matter, MDA's father was not immediately able to provide care and custody for his child. Just like respondent, he required rehabilitative services geared toward reunification. But unlike her sister, MDA's best interests would not be subject to on-going consideration and possible supervision in a child custody proceeding. As such, it was not necessarily in MDA's best interests to retain respondent's parental rights.

Moreover, termination was in MDA's best interests because she has no bond with her mother. The DHHS took MDA into care immediately after birth. During the first 15 months of MDA's life, respondent visited her approximately once each month. Although respondent and her relatives described a loving bond between parent and child, the caseworker observed no such relationship. And respondent had not participated in parenting classes and therapy to improve

her chances of bonding with MDA.  MDA requires stability and permanence.  Waiting for respondent to demonstrate some benefit from services was not in the child's best interests, even considering that the child has been placed with relatives.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering