*In re* DMK

Docket No. 294776. Submitted May 12, 2010, at Grand Rapids. Decided July 15, 2010, at 9:05 a.m.

A Children's Protective Services employee, in response to a complaint about the general well-being of DMK, a minor, visited the home of the child's father (respondent), accompanied by a police officer. The police officer took respondent into custody after ascertaining that an outstanding warrant authorized his arrest. The child, who resided with respondent, was left in the care of Heather Bosack, the mother of a different child of respondent. AK, the mother of DMK, had previously been substantiated as a perpetrator of child neglect and had been granted only supervised parenting time with the child. On October 4, 2007, a petition seeking temporary custody of the child by the Department of Human Services was filed in the Benzie Circuit Court, Family Division. The court, Nancy A. Kida, J., conducted a pretrial hearing on November 2, 2007. Neither respondent nor AK was present or represented by counsel. The court authorized the petition and continued the child's placement with Bosack. In December 2007, the court appointed counsel for both parents. On February 14, 2008, the court exercised jurisdiction over the child in light of AK's admission regarding several allegations in the petition. Respondent remained incarcerated at that time, and no arrangements for his participation in the hearing had been made. A dispositional hearing occurred on March 21, 2008, and a dispositional review hearing occurred in June 2008. Respondent, who was still incarcerated, did not attend either hearing in person or by telephone. Respondent participated by telephone in an August 2008 dispositional review hearing. Respondent attended a September 2009 review hearing and an October 2008 permanency planning hearing by telephone. The court thereafter authorized the department to file a termination petition. The department filed a supplemental petition in November 2008, requesting termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (*ii*), (h), and (j). On April 24, 2009, AK voluntarily relinquished her parental rights to the child. A termination hearing occurred on October 7, 2009. At the conclusion of the hearing, the court terminated respondent's parental rights under MCL 712A.19b(c)(*i*) and (h) after determining that termination was in the child's best interests. Respondent appealed, alleging,

in part, that the circuit court's and the department's failure to involve him in most of the proceedings required the reversal of the order terminating his parental rights.

The Court of Appeals *held*:

1. Respondent was deprived of the opportunity to participate in all the proceedings conducted from November 2007 through July 2008 because the prosecutor, the circuit court, and respondent's counsel all failed to adhere to the procedures described in MCR 2.004(B) and (C). By the time the circuit court recognized respondent's right to participate in the proceedings, the court and the department were ready to move on to the termination hearing. Therefore, respondent missed the crucial period during which the court was called upon to evaluate the parents' efforts and decide whether reunification of the child with respondent could be achieved. Respondent suffered prejudice because he remained absent during this critical time in the child-welfare proceedings. Excluding respondent for a prolonged period of the proceedings was not harmless error.

2. The department deliberately withheld services from respondent with the circuit court's approval. A court may not terminate parental rights on the basis of circumstances and missing information directly attributable to a parent's lack of meaningful prior participation. Because of respondent's inability to participate, there was a hole in the evidence on which the circuit court based its termination decision. The circuit court's order must be reversed and the matter must be remanded to permit the department to provide the services it has neglected to provide and for further proceedings.

3. The circuit court clearly erred by allowing the prosecutor to introduce hearsay evidence to prove that MCL 712A.19b(3)(c)(*i*) warranted termination. Because the circuit court assumed jurisdiction on the basis of AK's plea admitting allegations in the original petition, the department then filed a supplemental petition, and the circuit court proceeded to consider termination of respondent's parental rights on the basis of different circumstances than those admitted by AK, the circuit court should have entertained only legally admissible evidence, as required by MCR 3.977(F).

Reversed and remanded.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Colleen Kelly*, Assistant Attorney General, for petitioner.

*Law Office of Patrick Dougherty, PLC* (by *Patrick A. Dougherty*), for respondent.

Before: MARKEY, P.J., and ZAHRA and GLEICHER, JJ.

PER CURIAM. Respondent, the biological father of the minor child involved, appeals as of right a circuit court order terminating his parental rights to the child pursuant to MCL 712A.19b(3)(c)(*i*) and (h). Because the Department of Human Services (DHS) refused to engage respondent in the child protective proceedings, the record remains entirely devoid of any evidence concerning respondent's ability to care for his child in the near future, either personally or through placement with relatives. Consequently, "a 'hole' in the evidence" precluded termination of respondent's parental rights. *In re Rood*, 483 Mich 73, 127; 763 NW2d 587 (2009) (YOUNG, J., concurring in part). We reverse and remand for further proceedings.

### I. BASIC FACTS AND UNDERLYING PROCEEDINGS

On October 1, 2007, Children's Protective Services (CPS) received a complaint about "the general well being" of the minor. The child resided with respondent. The child's mother, AK, had previously been substantiated as a perpetrator of child neglect and had been granted only supervised parenting time with the child. CPS worker Michael Visel and a police officer visited respondent's home on October 1, 2007, to investigate the complaint. The officer ascertained that an outstanding warrant authorized respondent's arrest. When the officer took respondent into custody, respondent advised that Heather Bosack, the mother of another child of respondent, could care for the instant minor in his

absence. Respondent had earlier given Bosack a power of attorney authorizing her to care for the child.

Three days later, Visel filed a petition seeking temporary DHS custody of the child.[1] The petition alleged that respondent (1) was incarcerated because of an outstanding warrant, (2) was on parole for prior offenses including home invasion, unlawful use of a motor vehicle, and stealing and retaining a financial-transaction device, (3) had additional convictions of retail fraud, larceny, and domestic violence, (4) was jailed in July 2007 for alcohol and marijuana use, and (5) "is unable to care properly for [the child] due to his current incarceration, legal troubles, lack of employment, unstable housing, lack of transportation and lack of consistent progress even though many services were intact for support." The petition further averred: "Law enforcement is currently investigating a separate complaint that [respondent] sexually assaulted his three year old niece . . . . This investigation is pending."

On November 2, 2007, the circuit court conducted a pretrial hearing. Visel testified that respondent "right now . . . is in Jackson Correctional Facility awaiting a parole board violation hearing with the Department of Corrections." Neither respondent nor AK appeared at the hearing or had counsel present. The circuit court authorized the petition and continued the child's placement with Bosack. In December 2007, the circuit court appointed counsel for both parents.[2]

---

[1] The petition named as respondents both respondent and AK. AK eventually relinquished her parental rights to the child and is not a party to this appeal.

[2] The circuit court appointed counsel for AK on December 7, 2007. On December 10, 2007, respondent wrote a letter to the court seeking the appointment of counsel, and the court appointed counsel for him on that date.

On February 14, 2008, the circuit court exercised jurisdiction over the child in light of AK's admission with regard to several allegations in the petition. Respondent remained incarcerated, and no arrangements had been made for his participation in the hearing. Respondent's counsel represented that respondent was "aware of the proceedings and is willing to do whatever needs to be done, although he is going to be incarcerated for the near to long-term future." Visel expressed that he would develop a parent-agency agreement and service plan for AK. A potential service plan for respondent was not mentioned by the court, respondent's counsel, or Visel. Notably, respondent's counsel also did not even propose that respondent participate in future hearings by telephone.

On March 21, 2008, a dispositional hearing occurred. Respondent was still incarcerated and no arrangements had been made to enable him to participate by telephone. The prosecutor represented that the DHS "has entered into an initial service plan with the mother." The court inquired of DHS worker Matthew Dotson whether anything in the service plan related to respondent. Dotson responded negatively, confirming that petitioner had not considered a plan for respondent "because he's still incarcerated at this time." Respondent's counsel told the court that respondent hoped that "when he gets out of prison he can get into a plan himself." Respondent also did not attend the June 2008 dispositional review hearing, either personally or by telephone. The only mention made of him was the court's observation: "So there is probable cause to believe that the legal father is [respondent]. He does have an attorney. Apparently his attorney has been getting some communication from him. And we did discuss that he could be here by telephonic presence if he requests that at future hearings."

At the next dispositional review hearing, counsel and the court discussed an "ex parte letter" respondent had mailed to the court. The letter does not appear in the circuit court record. The court announced that "based on [counsel's] statement, as well as the letter that we recently got, we're going to make sure that [respondent] has the ability to participate in the future court hearings." At the August 2008 dispositional review hearing, respondent participated by telephone. The circuit court inquired whether respondent understood "that we are not able to include you in any sort of a plan, service plan, at this time because you are still incarcerated," and respondent answered affirmatively. Respondent later advised the court that his first projected date to be released from incarceration was October 3, 2009. At the next review hearing in September 2009, virtually no mention was made of respondent, despite his presence by telephone.

In October 2008, the circuit court held a permanency planning hearing, which respondent again attended by telephone. Dotson testified that he had not offered respondent a service plan, but that respondent had previously engaged in services:

> *Q.* [*Respondent's Counsel.*] As far as prior to this case arising, are you aware of any services that [respondent] participated in or took advantage of?
>
> *A.* I believe he participated in services offered through Grand Traverse County in the past. I can't exactly say what those were right off hand but do know there's been involvement from both Grand Traverse and Benzie County with him.
>
> *Q.* And as far as his completing those, is it your understanding that he did all right as far as participation wise?
>
> *A.* Correct. I believe that's why he received custody of [the child].

*Q.* And so at that point prior to this case arising, the department's position was that [respondent] was the proper person for [the child] to be with?

*A.* Prior to our complaint or our initial complaint we received, yes.

Respondent testified that the child had lived in his care "off and on" from "the winter" of 2006 until July or August 2007. At that point, AK "signed over custody" to him, and he thereafter cared for the child. Respondent explained that the child had special needs and communicated through sign language, which respondent had helped to teach him. Respondent expressed his desire to care for the child and added, "I would be very appreciative of any kind of help [the DHS] would give and any kind of guidance that they would be able to help me with and the goals that they would set down would be more initiative for me to do the best I could do." He reiterated that he anticipated possible release from prison at the end of 2009 or in early 2010.

The court authorized the DHS to file a termination petition. The DHS filed a supplemental petition in November 2008, requesting termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (*ii*), (h), and (j). On April 24, 2009, AK voluntarily relinquished her parental rights to the child.

On October 7, 2009, a termination hearing occurred. At the outset of the hearing, counsel disputed the applicability of MCR 3.977(F)(1)(b), which envisions that when considering the allegations in a supplemental termination petition, the court may order termination of parental rights only on the basis of "clear and convincing legally admissible evidence . . . ." The court ultimately ruled that it would require legally admissible evidence to prove the allegations in subdivision (h), but permitted the prosecutor to introduce any material and

relevant evidence relating to subdivision (c)(*i*). The court also took judicial notice of "the court file and documents."[3] At the conclusion of the hearing, the court terminated respondent's parental rights under MCL 712A.19b(c)(*i*) and (h) and determined that termination of respondent's parental rights would serve the child's best interests.

## II. ANALYSIS

### A. RESPONDENT'S PARTICIPATION

Respondent raises three issues on appeal, one of which we view as dispositive, specifically respondent's contention that the circuit court's and the DHS's failure to involve him in most of the proceedings demands a reversal of the order terminating his parental rights. The issues we address involve the application and interpretation of court rules and statutes, which we consider de novo. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

Because the prosecutor, the court, and respondent's counsel all failed to adhere to the procedures described in MCR 2.004(B) and (C), respondent was deprived of the opportunity to participate in all proceedings conducted from November 2007 through July 2008.

> A child protective action such as this consists of a series of proceedings, including a preliminary hearing at which the court may authorize a petition for removal of a child from his home, MCL 712A.13a(2), review hearings to evaluate the child's and parents' progress, MCL 712A.19, permanency planning hearings, MCL 712A.19a, and, in some instances, a termination hearing, MCL 712A.19b. Each proceeding generally involves different issues and

---

[3] The court stated that it "did not rely on any past verbal evidence particularly," but did not elaborate on that statement.

> decisions by the court. Thus, *to comply with MCR 2.004, the moving party and the court must offer the parent "the opportunity to participate in" each proceeding in a child protective action.* [*Mason*, 486 Mich at 154 (emphasis added).]

By the time the circuit court recognized respondent's right to participate in these child protective proceedings, "the court and the DHS were ready to move on to the termination hearing." *Id.* at 155. As in *Mason*, respondent "missed the crucial, year-long review period during which the court was called upon to evaluate the parents' efforts and decide whether reunification of the children with their parents could be achieved." *Id.*[4]

The DHS highlights that respondent had representation by counsel at nearly all the child protective proceedings and participated in the proceedings during the year immediately preceding the termination of his rights. The DHS thus opines that respondent cannot demonstrate that his attendance at the adjudication or the subsequent hearings would have affected the outcome of the case. However, we conclude that respondent endured prejudice because he remained absent during a critical time in these child welfare proceedings. This Court recognized in *In re LaFlure*, 48 Mich App 377, 390-391; 210 NW2d 482 (1973), that the facts gathered during review hearings set the stage for the decisions that follow:

> The purpose of the review hearings provided for by the statute is to determine whether the parents of a child in the temporary custody of the court have managed to "reestablish" a fit home or are likely to do so within the near future. We do not see how such a determination may be intelli-

---

[4] The respondent in *Mason* did not participate for the first year of the proceedings. Here, the period of respondent's absence was nine months, but this minor distinction does not render *Mason* inapplicable.

gently made unless the court making the determination is fully aware of the circumstances which prompted placing the child in the temporary custody of the court and of all subsequent circumstances, if any, which prompted keeping the child in the temporary custody of the court.

In this case, respondent did not appear by telephone at the adjudication, the dispositional hearing, or the first three dispositional review hearings. These initial hearings allow the parties to become familiar with the parents' abilities and deficits, the child's needs, and the efforts necessary for reunification. In a sense, the initial dispositional hearings form the cornerstones of the succeeding review hearings, the permanency planning phase, and the ultimate decision to terminate parental rights. Respondent's incarceration does not alter that; had he participated, he could have supplied the court with highly relevant information about his son's needs, the child's paternal family history, familial placement options, and the nature of the services necessary to achieve a permanency goal that would serve the child's best interests. The adjudicative and dispositional processes embodied in Michigan law and our court rules envision that early and meaningful parental participation facilitates the determination of the most beneficial permanency goal. In summary, we reject the DHS's suggestion that excluding a parent for a prolonged period of the proceedings can be considered harmless error.

### B. SERVICES

The DHS deliberately withheld services from respondent, with the approval of the circuit court. The failure to offer respondent any services clearly contravenes our Supreme Court's recent decision in *Mason*. In that case, as here, the DHS had focused on attempting reunifica-

tion with the mother "and, in doing so, disregarded respondent's statutory right to be provided services[.]" *Mason*, 486 Mich at 159.[5] In *Mason*, the respondent's release from prison was "potentially imminent at the time of the termination hearing." *Id.* Here, at the termination hearing respondent's parole officer characterized as "realistic" the likelihood that respondent would be released from prison "next month." According to the Michigan Offender Tracking Information System, respondent was released from prison on November 3, 2009, less than a month after the termination hearing. The Supreme Court in *Mason* concluded as follows:

> The state failed to involve or evaluate respondent, but then terminated his rights, in part because of his failure to comply with the service plan, while giving him no opportunity to comply in the future. This constituted clear error. As we observed in *In re Rood*, a court may not terminate parental rights on the basis of "circumstances and missing information directly attributable to respondent's lack of meaningful prior participation." *In re Rood*, 483 Mich [at 119] (opinion by CORRIGAN, J.); see also *id.* at 127 (YOUNG, J., concurring in part) (stating that, as a result of the respondent's inability to participate, "there is a 'hole' in the evidence on which the trial court based its termination decision"). [*Id.* at 159-160.]

---

[5] The Supreme Court in *Mason*, 486 Mich at 156, catalogued many different statutory references to the DHS's responsibility to provide parental services throughout child protective proceedings and a court's authority to modify a case service plan: MCL 712A.18f(3)(d) and (5), MCL 712A.19(6)(a) and (c), and MCL 712A.19(7)(a) and (b). The Supreme Court emphasized in *Mason*, 486 Mich at 159, that the circuit court had ignored the statutory language of MCL 712A.19a(6)(c), which envisions that a court need not order the DHS " 'to initiate proceedings to terminate parental rights' " if " '[t]he state has not provided the child's family, consistent with the time period in the case service plan, with the services the state considers necessary for the child's safe return to his or her home, if reasonable efforts are required.' " (Emphasis omitted.)

In conclusion, because we cannot meaningfully distinguish this case from *Mason*, we reverse and remand for petitioner to provide the services that it, to this point, has neglected to supply respondent and for further proceedings.

### C. EVIDENTIARY CONCERNS

Although our reversal of the circuit court's termination order on other court rule and statutory grounds renders unnecessary our consideration of additional appellate issues, we note our concern with evidentiary rulings of the circuit court that may recur on remand. At the termination hearing, the circuit court erred when it permitted the prosecutor to introduce evidence otherwise inadmissible under the Michigan Rules of Evidence.

The circuit court assumed jurisdiction on the basis of AK's plea admitting allegations in the original petition. Petitioner then filed a supplemental petition. Because the circuit court proceeded to consider termination of respondent's parental rights on the basis of different circumstances than those admitted by AK, it should have entertained only legally admissible evidence. MCR 3.977(F) instructs, in relevant part:

> Termination of Parental Rights on the Basis of Different Circumstances. The court may take action on a supplemental petition that seeks to terminate the parental rights of a respondent over a child already within the jurisdiction of the court on the basis of one or more circumstances new or different from the offense that led the court to take jurisdiction.
>
> (1) The court must order termination of the parental rights of a respondent, and must order that additional efforts for reunification of the child with the respondent must not be made, if

(a) the supplemental petition for termination of parental rights contains a request for termination;

(b) at the hearing on the supplemental petition, the court finds *on the basis of clear and convincing legally admissible evidence* that one or more of the facts alleged in the supplemental petition:

(i) are true; and

(ii) come within MCL 712A.19b(3)(a), (b), (c)(ii), (d), (e), (f), (g), (i), (j), (k), (l), (m), or (n); and

(c) termination of parental rights is in the child's best interests. [Emphasis added.]

"If . . . termination is sought under a supplemental petition, the court considers legally admissible evidence and must state its findings of fact and conclusions of law." *Rood*, 483 Mich at 101-102 (opinion by CORRIGAN, J.).

The circuit court ruled that it would allow the prosecutor to introduce hearsay evidence to prove that MCL 712A.19b(3)(c)(*i*) warranted termination. This ruling amounted to clear legal error. The prosecutor introduced several documents, including a report written by a social worker and another written by a parole board hearing officer, consisting of or containing inadmissible hearsay. Much of this inadmissible evidence focused on an allegation that respondent had sexually abused his niece. Notably, authorities never charged respondent with this alleged act, which he vehemently denied having committed. If proved by clear and convincing evidence, such conduct could constitute a ground for termination of respondent's parental rights. But the prosecutor made no effort to substantiate this allegation with legally admissible evidence.[6] In future

---

[6] Although certain police reports may qualify as admissible under MRE 803(8), the reports admitted here do not describe matters actually observed by an officer and are replete with multiple levels of inadmissible hearsay.

proceedings, we caution the circuit court to bear in mind the appropriate evidentiary standards in MCR 3.977(F).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.