*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BAM/JT, Minors.

UNPUBLISHED
July 11, 2019

No. 346310
Ingham Circuit Court
Family Division
LC No. 17-000175-NA

Before: M. J. KELLY, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's rights to her minor children, BAM and JT, pursuant to MCL 712A.19b(3)(b) (child abuse), (c)(*i*) (conditions leading to adjudication continue to exist); (g) (failure to provide proper care or custody); and (j) (reasonable likelihood of harm if returned to parent). Respondent contends that the Department of Health and Human Services (DHHS) did not accommodate her cognitive disability when providing services, and that insufficient evidence supported the statutory grounds for termination. We discern no error and affirm.

## I. BACKGROUND

Respondent is no stranger to Child Protective Services (CPS). In September 2014, CPS substantiated an improper supervision and physical neglect report involving her care of BAM. She received services. In July 2017, the DHHS took then 4½-year-old BAM and one-year-old JT into care based on allegations that respondent's live-in boyfriend (and JT's father), ST, had physically abused BAM. BAM reported that ST hit him hard on the side of his head.[1] The child suffered severe bruising to his face, neck, and ear. Respondent insisted that she had accidentally hit BAM with a door and has never acknowledged the abuse perpetrated by ST, although she later conceded that she sometimes "smacked" BAM out of "frustration." The DHHS sought jurisdiction on the theory that respondent failed to protect BAM from abuse. The children were

---

[1] The court also terminated ST's parental rights to JT. ST has not appealed.

initially placed in a nonrelative foster home but were eventually placed with their maternal grandmother.

Psychological testing revealed that respondent is cognitively impaired and largely illiterate. Despite her disability, respondent maintained employment throughout these proceedings. Recognizing her impairment, the caseworkers read the case service plan and all documentation to respondent and gave her additional time to ask questions.

The psychological report also indicated that respondent was easily frustrated and was at "high risk" to commit child abuse. To address this concern, respondent was referred to and completed a parenting class. Respondent also was directed to participate in individual counseling, which she did sporadically. She stopped attending counseling before the termination hearing. At some point, respondent and ST separated. However, several individuals reported observing respondent and ST together and respondent told the children's foster parents and others that she planned to reunite with ST once she regained custody of her children.

Respondent also reported using marijuana to control pain. The court-ordered case service plan required respondent to cease marijuana use and participate in substance abuse therapy, but respondent chose instead to secure a medical marijuana card. Midway through the proceedings, respondent committed to sobriety, attended counseling, and provided a series of clean drug screens. On the eve of the termination hearing, however, respondent tested positive for marijuana and missed other screens, which were considered positive.

Furthermore, midway through these proceedings respondent was evicted from her home. By the time of the termination hearing, respondent remained homeless and was moving from "couch to couch."

To respondent's credit, she faithfully participated in supervised parenting time with her children. The caseworker who supervised the visits testified, however, that respondent never provided food for the children despite that the visits occurred at dinner time. When the children complained of being hungry, respondent told them that she only had enough money to buy cigarettes and food for herself. The psychological evaluation report recommended a one-on-one parenting-time coach, but the DHHS delayed several months in providing this service. As a result, respondent was provided this service for only a month before the termination hearing. The court finally appointed a guardian-ad-litem for respondent at that time as well. The parenting-time coach noted that respondent implemented her suggestions and was showing benefit from the sessions.

## II. REASONABLE EFFORTS

Respondent argues that the DHHS failed to make reasonable efforts to reunify her with her children by failing to evaluate more fully the extent and nature of her intellectual disability and by delaying her referral to supportive visitation as recommended in her psychological evaluation.

Absent extenuating circumstances, the DHHS must make reasonable efforts toward reunification before a court may contemplate termination of a parent's rights. MCL 712A.19a(2). Moreover, to comply with the Americans with Disabilities Act, the DHHS must

make reasonable modifications to services to accommodate a parent's special needs. The absence of accommodation precludes a finding that reasonable efforts were made. *In re Hicks/Brown*, 500 Mich 79, 86; 893 NW2d 637 (2017). "The adequacy of the [DHHS]'s efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). However, a respondent has a commensurate responsibility to cooperate and participate in the services, and also to demonstrate benefit. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). "[A] parent, whether disabled or not, must demonstrate that she can meet [her children's] basic needs before they will be returned to her care." *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000).

Respondent has cited no authority for her proposition that the DHHS was required to secure additional testing beyond the psychological evaluation to assess respondent's special needs and the level of specialized services she required. The psychological evaluation revealed that respondent was cognitively impaired and the caseworkers personally observed respondent's literacy deficit. The DHHS accommodated respondent by reading documents to her, giving additional verbal instruction, and providing ample time for questions and explanations. Further evaluation was neither necessary nor required.

We are concerned by the delay in providing respondent with a recommended supportive parenting-time coach. Child protective proceedings must be handled swiftly to protect the rights of parents and children, allowing no room for months-long delays in providing necessary services. However, we agree with the circuit court that earlier provision of this service would not have changed the outcome of this case. Respondent's inappropriate discipline of BAM was only one concern in this case and it was the only issue addressed through this supportive service. The parenting-time coach would not have assisted respondent overcome her substance abuse and emotional issues. The coach also would not have assisted respondent with leaving her unhealthy relationship with ST or in finding new housing. Accordingly, we discern no ground for relief.

III. STATUTORY GROUNDS

Respondent also argues that the petitioner failed to present clear or convincing evidence to support the statutory grounds underlying the termination decision. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). The court's termination decision followed the filing of a supplemental petition. When termination is sought in a supplemental petition based on new grounds, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *Rood*, 483 Mich at 90-91. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b), (c)(*i*), (g), and (j), which provided at all relevant times:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

(*iii*) A nonparent adult's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home.

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination of respondent's parental rights under factor (b) was supported as respondent failed to protect BAM from physical abuse perpetrated by ST and never acknowledged that ST had been abusive. Respondent did admit during the proceedings that she had hit her child out of frustration and worked toward avoiding future abuse with counseling and, finally, a parenting-time coach. However, respondent never acknowledged ST's part in the abuse and expressed her intent to reunite with ST when she regained custody of her children. Accordingly, BAM and JT

-4-

faced a reasonable likelihood of further harm if returned to respondent's care. This evidence therefore supported termination under factor (j) as well.

Termination is supportable under factor (c)(*i*) when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor, *Williams*, 286 Mich App at 272, and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). The main conditions leading to adjudication were the abuse in respondent's home, respondent's substance abuse, and respondent's mental health issues. Respondent displayed insufficient benefit from services to overcome these obstacles to reunification. Respondent attended individual therapy only sporadically and discontinued the service before the termination hearing. Accordingly, she did not adequately address her mental health issues or develop strategies to avoid abusive behavior or to protect her children from abuse. Instead of immediately ceasing marijuana use pursuant to the court's order, respondent secured a medical marijuana card. Respondent briefly stopped using marijuana mid-proceedings and provided a series of clean drug screens, but reverted to use of the substance on the eve of termination. She therefore did not rectify this condition, either.

Respondent blames her slow progress and lack of benefit on her cognitive impairment and the delayed provision of accommodated services. Respondent's cognitive impairment did not prevent her from continuing her participation in the services provided, however. Had she continued with substance abuse counseling and individual therapy, these proceedings may have resulted more favorably.

Supporting termination under factor (g) was respondent's loss of housing during the proceedings and her financial inability to bring food for her children to parenting-time sessions. Given that the cognitively impaired respondent worked only 20 to 25 hours each week, and likely at a minimum-wage job, we find it unlikely that she was financially able to provide proper care and custody for her children. The court improperly relied upon this factor in terminating respondent's parental rights. As the court need find only one statutory ground to support termination, however, reversal is not warranted.

We affirm.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher