*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CARDEN, Minors.

UNPUBLISHED
April 14, 2022

Nos. 358053; 358224
Lenawee Circuit Court
Family Division
LC No. 19-000308-NA

Before: GLEICHER, C.J., and K. F. KELLY and PATEL, JJ.

PER CURIAM.

The circuit court terminated the parental rights of both mother and father to their six children, TNC, DC, TMC, DIC, TCC, and DCC. The court determined that respondent-mother had not satisfactorily addressed her substance abuse issues despite years of services and had not sufficiently benefitted from services to improve her parenting skills, warranting termination. In addition to unredressed substance abuse, the court terminated respondent-father's parental rights based on his repeated criminal behaviors. Although respondent-mother made valiant efforts to overcome the obstacles to reunification, she ultimately was unable to provide a safe home for her children. Accordingly, we affirm the termination of both parents' rights.

## I. BACKGROUND

Respondents have six children, ranging in age from 8 to 17. They also both have an extensive history of substance abuse. Respondent-mother has been abusing substances since adolescence. The Department of Health and Human Services (DHHS) began providing services and drug screens to mother in 2012, shortly before the birth of her final child. The DHHS filed the current petition to take the children into custody on June 5, 2019, when the children called 911 because they could not wake mother after a two-day drug binge.

On the date the petition was filed, respondent-father was in prison for leading police on a high-speed chase with mother and several of their children in the vehicle. The chase occurred because mother had left some of the children at a drug house and the occupants would not allow the children to leave. Father stabbed one of the home's occupants and the couple escaped with the children. This was not father's first incarceration, and he has been absent for long periods throughout the children's lives. Father remained incarcerated until the summer of 2020. A

-1-

condition of father's parole was that he not have contact with mother. Respondents did not comply with this provision.

Sexual abuse was also a concern. There were allegations that two of mother's siblings, while still minors themselves, had molested one or more of respondents' children. Mother also maintained a relationship with an elderly man named Samuel Compton. Compton had provided financial assistance to mother over the years and mother and the children lived with Compton for a time. However, Compton was a registered sex offender who had committed offenses against children, a fact known by mother. While living in his home, Compton sexually abused then six-year-old TCC. There were also allegations that Compton may have abused some of TCC's siblings.[1]

The children were divided among three relative placements and all have done very well. Respondent-mother completed parenting classes and a psychological evaluation and participated in therapy. She entered an in-patient drug treatment program, graduated to transitional housing, and then moved into a rented home with a coworker before securing her own residence. Mother participated in drug screens and Narcotics Anonymous meetings, and had a mentor she spoke with weekly. Early on, many of mother's drug screens tested positive for cocaine. Mother insisted that she had not used cocaine and a state investigation revealed many irregularities with the contractor performing those tests. The circuit court excluded those drug tests from the record. However, using a new contractor, respondent later tested positive for marijuana on several occasions and methamphetamine on one.

In November 2020, the circuit court excluded the problematic drug tests from the evidence. Although the court suspended both parents' supervised parenting time in October 2020 based in part on their drug use during that time, the court did not reinstate parenting time after its evidentiary ruling. "Concerning" incidents during the visits convinced the court that reinitiating parenting time would not serve the children's best interests. A case report described that mother had difficulty dividing her attention and appropriately disciplining her children. She "frequently discusse[d] topics with her children that are not appropriate, such as past romantic partners, illicit drug use, and frustrations with their father." Mother made promises she could not keep. She also argued with the children about their foster parents and told them that their foster placements were not their homes. During one encounter, mother was upset that her daughter DC wanted a "lesbian haircut." Mother relented and agreed to the haircut, but afterward made cruel remarks.

Difficulties occurred during father's parenting time as well. Father exhibited bouts of explosive anger; he "frequently expresse[d] frustration towards his children during visits, displaying angry and aggressive language, pounding his fists on tables . . . ." He sometimes showed up under the influence of substances. On one occasion, father appeared to purchase drugs during a visit and then went into a bathroom to use the substance. In fact, respondent-father could

---

[1] We note that police investigated the possibility that mother permitted Compton access to her children in exchange for financial assistance. The allegations were not substantiated and charges were never brought. It appears that Compton only avoided prosecution because he died during the pendency of the investigation.

not complete a psychological evaluation as required by the case service plan because he twice appeared for the evaluation under the influence.

On December 26, 2020, mother's sister summoned police because respondents were together in mother's home and were using methamphetamine. The sister reported that father had physically assaulted mother. Father disappeared before the police arrived. Mother admitted that she had allowed father to stay with her for a week. That day, father became very angry that mother had "allowed" the children to be sexually abused. Mother described that father threatened to kill her by injecting her with poisoned drugs, choked her, and threw her to the ground. Mother further stated that father threatened to kill Compton.

On January 7, 2021, father engaged in a string of robberies in Ohio. He was arrested, but escaped custody. On January 15, father allegedly murdered two people. He remains incarcerated awaiting trial for this offense.

During the spring of 2021, while her parenting time was suspended, mother was spotted sitting in her car at two of her children's softball games. She also approached TCC while the child was riding a bicycle outside of her foster home. And mother had unsupervised contact with her older children over social media. Mother tested positive for methamphetamine on one occasion. In early May, mother was involved in a motor vehicle accident while intoxicated from alcohol. A week later, mother tested positive for alcohol at a drug screen. Despite these setbacks, mother was able to secure a high paying job as an LPN, a matter of concern as she would have access to controlled substances.

Throughout the proceedings, the case worker presented significant evidence about the trauma the children had endured in their lives and its lasting impact. The children had all thrived in their relative placements, showing improvement in behavior and academically. They had all joined sports teams and made new friends. The older children were finally able to enjoy their lives without parenting younger siblings. The children expressed divergent views about their desires to maintain some connection with mother and father, but all agreed that they did not want to return to their parents' care. All three sets of foster parents testified to their willingness to adopt the children, to continue the sibling relationships, and to support the children in the event they desired contact with their parents.

Ultimately, the circuit court terminated both parent's rights under MCL 712A.19b(3)(c)(*i*) and (j). The court also cited MCL 712A.19b(3)(g) in terminating father's rights. Both parents appeal, challenging the evidentiary support for the statutory termination grounds and the court's conclusion that termination was in the children's best interests.

## II. STATUTORY GROUNDS

Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). The court's termination decision followed the filing of a supplemental petition. When termination is sought in a supplemental petition based on new grounds, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129

(2010). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (cleaned up). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

## A. RESPONDENT-MOTHER

Clear and convincing evidence supported termination of mother's parental rights under factor (c)(*i*). The children had been in care more than two years by the time of the termination hearing. The main condition that led to adjudication in relation to mother was her substance abuse. And mother had yet to rectify that condition despite nine years of services, making it unlikely she would overcome this obstacle within a reasonable time.

The record supports that mother began abusing substances when she was a teenager, and therefore has struggled with this problem for the entirety of her children's lives. Child Protective Services (CPS) intervened in 2012, and mother was given random drug screens and access to

-4-

services to address her substance abuse. However, in 2019, father was imprisoned after stabbing a man and leading police on a high speed chase, events stemming from mother leaving some of the children at a drug house. Left alone to care for six children, mother continued abusing substances. Her inability to safely supervise her children led to the institution of this action. Although many of mother's drug screens were excluded from the record, there is evidence that mother continued using substances after that time despite participating in intensive substance abuse services. In August 2020, mother was involved in a car accident linked to mechanical problems. However, mother was also under the influence of alcohol at the time. On December 26, 2020, officers responding to mother's home noted that she appeared to be under the influence. In the spring of 2021, mother repeatedly tested positive for marijuana and once for methamphetamine. Despite being ordered to avoid all mind-altering substances, mother was involved in a drunk driving accident in May 2021, and tested positive for alcohol a week later. Mother's position that alcohol was not her "drug of choice" is completely irrelevant. Mother was substituting one addictive substance for another, with disastrous results.

Given respondent-mother's extensive history of substance abuse, the lengthy period of services given to her, and continued use of substances up to the eve of the termination hearing, the court did not err in finding that mother would not be able to overcome this obstacle within a reasonable time to parent her children. Accordingly, the court did not err in finding termination factually supported.

Another point of concern identified in the petition was respondent-mother's parenting skills. Mother had often placed her children in dangerous positions and failed to adequately supervise them. This forced the older children to parent the younger ones. Further, despite knowing his status as a child sex offender, mother moved her children into Compton's home. Mother completed a parenting class in March 2020. The instructor reported that mother "did not show benefit from this program." Indeed, mother's inappropriate behavior with the children led to the suspension of parenting time in the fall of 2020. Mother participated in another parenting class at that time. And a thorough review of the record shows that mother never addressed the trauma caused to her children by her conduct. Ignoring that trauma, and the court-ordered suspension of her contact with the children, mother continued to appear in the children's neighborhoods, sporting events, and social media feeds. This too supported the court's determination that termination was supported under factor (c)(*i*).

Mother's continued substance abuse, failure to benefit from parenting classes, and failure to acknowledge the trauma caused to her children by allowing a sexual predator access to them also supports termination under factor (j). As noted, mother has already placed her children in danger on several occasions and has never provided adequate supervision. She did not adequately benefit from services provided to remedy these problems. Mother continued to abuse marijuana, alcohol, and methamphetamine even shortly before the termination hearing. She did not benefit from parenting classes, and behaved inappropriately during parenting time. From this evidence, the court could conclude that mother would continue to place her children in dangerous situations and provide inadequate supervision in the future.

## B. RESPONDENT-FATHER

The evidence also supports the court's termination of father's parental rights under factors (c)(*i*), (g), and (j).

Some of the conditions leading to adjudication as to father were his substance abuse, criminal activity, and violent temper. These conditions continued to exist at the time of the termination hearing with no sign of abatement. When father was released from prison in the summer of 2020, he immediately returned to substance abuse. He overdosed on one occasion, then entered an inpatient drug rehabilitation program, but continued to abuse substances. He could not complete a psychological evaluation because he twice appeared under the influence. Supervisors opined that father was under the influence at more than one parenting-time session and he actually purchased and used drugs during one visit.

Father continued to engage in criminal activity as well. In December 2020, father physically assaulted mother. In January 2021, father engaged in a robbery spree and was arrested. Father escaped custody and then allegedly committed a double homicide. If father is convicted as charged, he will remain in prison for the rest of his life.

During the brief period when father was able to visit with the children, he used aggressive language, yelled at the children, and pounded his fists on the table. Given this history, the court did not clearly err in finding that the conditions that led to adjudication continued to exist and could not be rectified within a reasonable time and that the children faced a high risk of harm if placed in father's care. Accordingly, this evidence more than adequately supported termination under both factors (c)(*i*) and (j).

Clear and convincing evidence also supported termination under factor (g). Father has been in and out of prison throughout the children's lives. When present, father has abused drugs and the children's mother. At no time has father provided a safe environment for his children. Given his continued drug use and criminal behavior, father will be unable to provide proper care and custody at any point in the foreseeable future. We discern no error in the circuit court's conclusion that three factors supported termination of father's parental rights.

## III. BEST INTERESTS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. We review the court's factual findings in this regard for clear error. *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014).

Factors relevant to the best-interest determination include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child,

the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). "[T]he fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *Olive/Metts*, 297 Mich App at 43. Moreover, the court must consider the situation of each child involved to determine if termination would be in his or her individual best interests. *White*, 303 Mich App at 715.

There is no doubt that respondents love their children. As described by the foster parents, it is also clear that the children love their parents and may want a future relationship with them. Respondents share a bond with each child and that bond was not destroyed by the suspension of parenting time. However, this alone is not enough to retain parental rights when termination is in the best interests of the child.

The children have all suffered significant trauma from events occurring while in their parents' care. The older children understood that their parents were addicted to drugs. They were forced to supervise and parent the younger children because of their parents' addictions and lost a large piece of their childhood. Moreover, father has been absent for long stretches of time during the children's lives while he has been incarcerated. The children have witnessed some of their father's criminal acts. They have been placed in danger repeatedly and left to fend for themselves. This has caused emotional harm.

Respondents' performances under their case service plans demonstrate that they cannot provide a safe, stable home for their children. Father has not complied with any aspect of his services. Mother continues to abuse controlled and mind-altering substances despite receiving services since 2012. The children all need permanent, stable homes and a reliable support system. Respondents have not shown that they can provide that.

The circuit court acknowledged that the children are in relative placements, but found termination still to be in the children's best interests. The foster parents of the younger children described that the lack of permanence in the foster arrangement caused the children fear and anxiety. Although the children did not completely agree on the level of attachment they felt toward their parents, none wanted to return to their parents' care. The foster parents were all willing to adopt the children, and to support and supervise a continuing relationship with respondents if the children desired. Terminating respondents' parental rights under these circumstances was clearly in the children's best interests.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Sima G. Patel