*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MARCUSSE, Minors.

UNPUBLISHED
June 10, 2025
3:13 PM

No. 371407
Barry Circuit Court
Family Division
LC No. 22-009523-NA

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor children, BM and LM, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist); MCL 712A.19b(3)(g) (failure to provide proper care and custody); MCL 712A.19b(3)(h) (parent imprisoned for such a period that the child will be deprived of a normal home for more than two years); and MCL 712A.19b(3)(j) (child will be harmed if returned to the parent).[1] We reverse and remand.

## I. FACTUAL BACKGROUND

According to the initial petition filed in this matter, the children were removed from mother's home because they were at risk of harm from mother's methamphetamine and other substance use, which interfered with her ability to parent appropriately and led to previous criminal convictions. The petition alleged that mother failed to provide safe housing for the children and frequently left them unsupervised. Additionally, the children had missed a significant amount of school, and at one point, mother refused to sign the necessary forms so that they could receive proper medical care. When the petition was filed, the children's father was incarcerated.[2]

---

[1] Mother has three older children, AP, CP, and RP, who were placed with their nonrespondent father and are not the subject of this appeal. Therefore, any reference to "the children" in this opinion is made to BM and LM, and reference to the older children will only be made as is relevant to BM and LM.

[2] During this case, the children's father voluntarily terminated his parental rights.

Mother's older children, AP and RP, told foster-care workers that they did not feel safe at home and that RP was the primary caretaker for all the younger children.

Following the children's removal, mother was mostly unreachable by petitioner, the Department of Health and Human Services (DHHS). As a result, she repeatedly missed parenting-time visits and failed to participate in other scheduled services. While the proceedings below were ongoing, mother was arrested after becoming a suspect in a deadly motor vehicle accident. She was housed at a local county jail while the criminal case was pending. Mother was later convicted, and in March 2023, she was sentenced to serve 5 to 10 years in prison. At a review hearing held after mother was moved to prison, the children's lawyer-guardian ad litem (LGAL) testified that mother signed a case service plan in which she agreed to: "Complete any service available to her while incarcerated[;] Be open and honest with all service providers[;] Provide documentation of all services completed[;] Follow all recommendations from any service providers[;] Abide by the rules set forth in the 'Parenting Time Guidelines' . . . [; and] Complete a parent education course[.]"

Almost two years after the initial petition in this matter was filed, DHHS filed a supplemental petition for termination of mother's parental rights. A termination hearing was held the following month. By the time the termination hearing took place, the children had been in foster care for 25 months. Mother's earliest release date from prison was not for another three years. The trial court found that reasonable efforts had been made to reunify mother with the children, but mother failed to show any benefit from the services offered. Accordingly, the trial court found that there was clear and convincing evidence to terminate mother's parental rights under MCL 712A.19b(3)(c)(*i*); MCL 712A.19b(3)(g); MCL 712A.19b(3)(h); and MCL 712A.19b(3)(j). The court likewise found that termination was in the children's best interests. This appeal followed.

## II. ANALYSIS

### A. REASONABLE EFFORTS

Mother first argues that DHHS failed to make reasonable efforts toward reunification before the supplemental petition for termination was filed. We disagree.

In order to preserve an argument that DHHS failed to make reasonable efforts toward reunification, the respondent must "object or indicate that the services provided to them were somehow inadequate . . . ." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). The time for asserting the need for accommodation in services is when the court adopts a service plan or soon afterward. *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *Id*. at 337. "[S]ervices that are adequate at the beginning of the case may become inadequate as the case proceeds." *Id*. Thus, a respondent must be afforded "multiple opportunities to, as the circumstances change, object to the adequacy of the services being provided." *Id*.

In the court below, mother's counsel frequently argued that mother was making progress and benefiting from the services provided, even though her access to services was limited by her incarceration. Mother's counsel never objected that the services provided were inadequate. The only affirmative indication made by trial counsel that services were inadequate pertained to parenting time, which her counsel requested she be granted after she was transferred from county jail to prison. The trial court denied this request. Accordingly, this issue is preserved only as to parenting-time services. See *In re Atchley*, 341 Mich App at 336; *In re Frey*, 297 Mich App at 247.

"We review for clear error a trial court's decision regarding reasonable efforts." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). Additionally, "[t]his Court reviews for clear error a trial court's factual findings following a termination hearing." *In re Gonzales/Martinez*, 310 Mich App 426, 430; 871 NW2d 868 (2015). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (quotation marks and citation omitted).

However, if an error is unpreserved, our review is for "plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted). Reversal is warranted if "the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *In re Utrera*, 281 Mich at 9 (quotation marks and citations omitted).

As an initial matter, we note that mother argues that she was denied parenting time with the children. The record indicates that mother did not have any parenting-time visits after May 6, 2022, in part because at the time she was attempting to hide from the police and was not in contact with the children or with DHHS. Once mother was arrested and placed in county jail, she indicated that she did not want to have parenting time because she did not want the children to see her in jail. At the time, she was still permitted to write the children letters in order to maintain contact with them. Mother first requested parenting time after she was convicted and moved to prison. In response, a foster-care worker testified that parenting time could be traumatizing to the children because they did not "understand . . . what a prison is or understand why [mother] is where she is or what she did to get there." Additionally, the foster-care worker expressed concern that parenting time would be harmful to the children due to a lack of a bond or relationship with mother, who had not seen the children in over a year at that point. The foster-care worker explained that any gifts or letters mother wanted to give to the children had been delivered to them, but that "at this time we don't recommend that they have a video or a [sic] in-person visit."

According to MCR 3.965(C)(7)(a), "[u]nless the court suspends parenting time pursuant to MCL 712A.19b(4), or unless the child has a guardian or legal custodian, the court must permit each parent frequent parenting time with a child in placement unless parenting time, even if

supervised, may be harmful to the child." As earlier noted, by the time mother's counsel first requested parenting time, the children had not seen mother in 15 months. Mother never sought to see the children prior to her transfer to prison. The trial court decided that parenting time could be traumatizing for the children given that they had not seen mother in over a year and might have trouble processing mother's incarceration. Under the circumstances, we find no error in the court's ruling on this point.

Mother also argues that DHHS failed to make reasonable efforts toward reunifying her with the children by providing her with services geared toward that goal. Generally, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich at 85-86. "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

DHHS offered services to mother both before and after she was incarcerated. Before her incarceration, she failed to meaningfully participate in services. Mother went to Las Vegas without any notice shortly after the children were removed from her care, missing one of BM's medical appointments and a parenting-time visit. Mother did not respond to any of DHHS's efforts to contact her in May and June 2022 because at that time, she was attempting to avoid arrest for her involvement in a fatal motor vehicle accident. The only service that mother engaged in before ceasing contact with DHHS was an intake appointment for parenting classes. As a result of her attempts to abscond from police, mother missed at least 10 parenting-time visits, a psychological examination, a substance-abuse assessment, drug screens, counseling sessions, and parenting classes. Beyond that, she voluntarily lost all contact with the children. The services offered indicate that DHHS made reasonable efforts toward reunification prior to the filing of the supplemental petition for termination of mother's parental rights. Unfortunately, mother failed to meaningfully participate in them.

After mother was arrested and placed in county jail, a foster-care worker met with her three times. While in jail, mother completed the Change for Wellness group program; worked on completing the Addiction Recovery Skill Workbook; completed a safety plan; and attended counseling, alcoholics anonymous (AA) meetings, narcotics anonymous (NA) meetings, and Bible studies. The foster-care worker also provided mother with resources about parenting classes and parenting education. After mother was sentenced and moved to prison, DHHS maintained at least monthly communication with her. During that time, mother completed parenting from prison classes, as well as AA and NA courses. She additionally received certificates of completion for advanced substance-abuse treatment and a program called Moving On. Thus, it is apparent that mother was provided with access to services and adequately participated in them while incarcerated.

Mother nevertheless contends that DHHS failed to communicate with the prison regarding services between March 2023 and February 2024. However, the record shows that DHHS was in contact with support staff, who sent mother's service progress and attempted to set up in-person or virtual visits with mother through the prison. Mother likewise argues that DHHS failed to

communicate with her between October 13, 2023 and January 30, 2024, despite the requirement to update the case service plan in 90-day intervals pursuant to MCL 712A.18f(5). However, the record shows that DHHS sent monthly letters to mother and that the case service plans were updated in 90-day intervals during this time. Based on the foregoing, it is clear that mother was provided with case service plans, reunification services, and the opportunity to participate in the plan for reunification. Accordingly, mother cannot show that DHHS failed to make reasonable efforts to reunify her with the children.

## B. MCR 2.004

Mother next argues that her right to participate in the proceedings below was violated. We agree.

Mother was unable to attend three consecutive review hearings, held on August 8, 2023, October 10, 2023, and January 9, 2024. As a result, mother went roughly ten months without being able to attend or participate in a hearing. The record provided to this Court indicates that written notices regarding the August 8, 2023 and October 10, 2023 hearings were sent to the prison where mother was incarcerated. It appears that no written notice was sent for the January 9, 2024 hearing. However, during the January 2024 hearing, the trial court noted that it attempted to arrange for mother to appear via Zoom, but that it had not received any Zoom contacts from the prison. At each hearing, the trial court noted that technical difficulties or other failures by the prison were the cause of mother's failure to appear. Over the course of the hearings, mother's counsel also highlighted other impacts from such difficulties with the prison—namely, that they were impairing his ability to document mother's benefit from the services she was receiving while in prison, and had prevented mother from participating in any family team meetings since she had been at the prison.[3] At the conclusion of the January 9, 2024 hearing, the court entered an order that, among other things, suspended mother's parenting time and directed DHHS to initiate proceedings to terminate her rights.

"MCR 2.004 requires the court and the petitioning party to arrange for telephonic communication with incarcerated parents whose children are the subject of child protective actions." *In re Mason*, 486 Mich at 152-153; see also MCR 2.004(A) through (C). The trial court "must consider 'the scheduling and nature of future proceedings, to the extent practicable, and the manner in which the incarcerated party may participate.' " *In re Mason*, 486 Mich at 153, quoting MCR 2.004(E)(5). MCR 2.004(F) further provides:

> A court may not grant the relief requested by the moving party concerning the minor child if the incarcerated party has not been offered the opportunity to participate in the proceedings, as described in this rule. This provision shall not apply if the incarcerated party actually does participate in a telephone call or video

---

[3] The record also reflects other difficulties with the prison. For instance, at the subsequent termination hearing, a foster-care worker testified that she had attempted to arrange for an in-person visit with mother, but the prison was not responsive.

conference, or if the court determines that immediate action is necessary on a temporary basis to protect the minor child.

"[T]o comply with MCR 2.004, the moving party and the court must offer the parent the opportunity to participate in *each proceeding* in a child protective action." *In re Mason*, 486 Mich at 154 (quotation marks omitted) (emphasis added).

Mother contends that her inability to attend and participate in these three hearings violated her rights because she was unduly prevented from participating in the proceedings. Mother points out that her lack of participation is especially significant given that the trial court suspended mother's parenting time and ordered DHHS to file a supplemental petition for termination at the close of the January 2024 hearing. We agree with mother's argument. It is clear that mother was denied the opportunity to meaningfully participate at a key point in the proceedings, since it was during the hearings at issue that the trial court determined that DHHS should move forward with termination. Indeed, at a hearing on May 23, 2023—the last hearing mother was able to attend before the court decided to order the termination petition—the court stressed the importance of this stage of the proceedings and mother's participation in it, including that it was mother's "burden of proof as a parent, at the next review, to prove by compelling reason" why the court should not order the petition. The ensuing failure to ensure that mother was able to attend the hearings at issue, particularly the January 2024 hearing, meant that she was unable to participate in the portion of the proceedings "during which the court was called upon to evaluate the parents' efforts and decide whether reunification . . . could be achieved." *Id*. at 155. And while mother was able to attend other hearings before and after the ones at issue, "participation . . . during one proceeding will not suffice to allow the court to enter an order at another proceeding for which the parent was not offered the opportunity to participate." *Id.* at 154.

*In re Mason* makes it clear that, to comply with MCR 2.004(C), the trial court and DHHS must ensure that an incarcerated parent is given due opportunity to participate in all stages of the child protective proceedings. DHHS contends that their burden under the court rule was satisfied solely by its attempts to secure mother's participation, even if she was ultimately unable to appear at the hearings. But to accept this argument under the facts of this case would be to disregard that the court and DHHS have a duty to safeguard an incarcerated parent's right to " 'adequate notice . . . and . . . an opportunity to respond and to participate' " in the proceedings. *In re Mason*, 486 Mich at 153, quoting MCR 2.004(E)(1). Part of that responsibility involves "determining 'how the incarcerated party can communicate with the court,' " as well as " 'whether the party needs special assistance for such communication, including participation in additional phone calls.' " *Id*. at 152-153, quoting MCR 2.004(E)(4). On the record before us, it is unclear what effort, if any, DHHS or the court made to determine why the prison was not properly ensuring that mother appeared at the hearings or whether mother required assistance to access the hearings. Instead, DHHS simply claims that mother's failure to appear was the prison's fault. But even if that is so, neither *In re Mason* nor MCR 2.004 suggest that an incarcerated parent's requisite "opportunity to participate in the proceedings" can be deemed met or excused merely because the prison failed to do its part to help ensure it. Mother was not duly afforded that opportunity in this case. As a result, her right to participate in the proceedings was violated.

DHHS additionally contends that mother's rights were safeguarded because she was represented by an attorney at the hearings she did not personally attend. We are not persuaded by

this argument. Mere representation by an attorney during child protective proceedings is not sufficient to show that a respondent had an opportunity to participate in accordance with MCR 2.004. *In re DMK*, 289 Mich App 246, 254; 796 NW2d 129 (2010). Participation is crucial at particular stages, including when the trial court must determine whether to order a petition for termination of parental rights, because the parent's meaningful participation in child welfare proceedings "facilitates the determination of the most beneficial permanency goal." *Id*. at 255. Here, mother's inability to appear at the January 2024 hearing denied her the opportunity to offer testimony regarding whether a supplemental petition for termination of her parental rights should be filed.[4]

On this record, we conclude that mother's right to participate in the proceedings under MCR 2.004 and *In re Mason* was violated. As a result, relief from the trial court's subsequent termination of mother's parental rights is warranted. See *In re Mason*, 486 Mich at 152 (stating that termination of a respondent's parental rights is premature when the respondent is not offered "a meaningful and adequate opportunity to participate" as a result of the court's and DHHS's failure to adhere to court rules); see also *In re DMK*, 289 Mich App at 255 (rejecting the "suggestion that excluding a parent for a prolonged period of the proceedings can be considered harmless error"). On remand, mother must be afforded due opportunity to participate in the child protective proceedings before the court may order DHHS to petition for termination of mother's parental rights.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.[5]

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani

---

[4] The record reflects that mother was able to electronically attend a subsequent status review hearing on April 2, 2024, the first hearing she was able to attend since May 2023. For the April 2 hearing, DHHS submitted a report indicating, among other things, that the previously ordered petition to terminate mother's parental rights would be filed soon. At the hearing, for reasons unclear from the record, the court again ordered the petition to be filed. As discussed above, the record is clear that, approximately three months prior to this hearing, the court made the decision to move forward with termination proceedings and ordered the suspension of mother's parenting time and the filing of a petition to terminate her rights. Given these circumstances, we do not consider mother's attendance at this subsequent hearing, and the court's re-ordering of the termination petition at that time, sufficient to cure the prior failures to ensure mother received due opportunity to participate in the proceedings. See *In re Mason*, 486 Mich at 154-155; *In re DMK*, 289 Mich App at 255.

[5] Because we conclude that termination was premature, we decline to address the merits of the trial court's statutory-grounds and best-interest rulings. *In re Mason*, 486 Mich at 152.