*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CONTRERAS/CONTERAS/CONTREAS, Minors.

UNPUBLISHED
December 15, 2022

No. 361231
Van Buren Circuit Court
Family Division
LC No. 18-019017-NA

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her children JC, SC, and VC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist after 182 or more days since the issuance of an initial dispositional order, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time) and (j) (reasonable likelihood based on parent's conduct that child will be harmed if returned to home of the parent).[1]  We affirm.

## I.  FACTUAL BACKGROUND

In June 8, 2018, Children's Protective Services (CPS) specialist Cassandra Staffen filed a petition for temporary wardship on behalf of petitioner, the Department of Health and Human Services (DHHS), requesting that the trial court take jurisdiction over VC, SC, JC, and NW[2] under MCL 712A.2(b)(1) and (2).  It was alleged that respondent's children had been observed in unsafe places without supervision and there were concerns regarding respondent's cognitive ability to parent her children.  The petition also alleged that respondent's home was unsuitable, as it had multiple large holes in the floor and there were concerns that the home would be without gas due

---

[1] The court also terminated the parental rights of the father to JC, SC, and VC (hereinafter, "the father").  However, the father is not a party to this appeal.

[2] While NW was also respondent's child, the trial court's jurisdiction over NW was later dismissed, and this appeal does not involve NW.

to financial issues. Following a preliminary hearing, the court authorized the temporary custody petition. JC, SC, and VC were placed with the DHHS for care and supervision.

At the adjudication hearing, respondent admitted to multiple allegations in the temporary custody petition, and the court found by a preponderance of the evidence that there were statutory grounds to exercise jurisdiction over the children under MCL 712A.2(b). At the conclusion of the dispositional hearing, the court found that the DHHS was making reasonable efforts to prevent or eliminate removal of the children from respondent's home, including foster-care services, family team meetings, parenting time, referrals to parenting education classes, transportation assistance, New-Outlook services, and family reunification funding. The court also found that custody of the children with respondent presented a substantial risk of harm to the children's lives, physical health, or mental well-being, and the conditions of custody at the children's foster-care placement were adequate to safeguard their health and welfare.

A supplemental petition was filed on April 29, 2019.[3] The petition alleged that a referral was made to CPS in February 2019, alleging that the father slept in SC's bed with her and touched her vaginal area. The petition further alleged there were ongoing concerns regarding respondent's ability to parent and supervise her children without assistance as a result of her cognitive delays. Following a preliminary hearing, the court found by probable cause that one or more of the allegations in the supplemental petition were true. It authorized the petition.

On or about January 31, 2022, petitioner filed a petition to terminate respondent's parental rights under MCL 712A.19b(3)(a)(c)(*i*) and (j). The petition indicated that the father had been convicted of one or more counts of criminal sexual conduct. Petitioner asserted that termination was in the children's best interests under MCL 712A.19b(5).[4]

Following a termination hearing, the court found statutory grounds for the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(c)(j). The court noted that the children had been involved with the DHHS since at least 2015. The court found that the DHHS continued to have concerns regarding respondent's parenting ability. Further, the court highlighted the testimony of respondent's counselor, Liz Boshoven, who stated that respondent had not benefited from her counseling sessions. The court noted that Ms. Boshoven's testimony indicated that JC and SC expressed fear about returning to respondent's care. Further, the court also noted that the testimony of DHHS foster care worker Kylie Harris, who had worked with the family since December 2018, revealed that respondent had unsuitable housing. The court noted that, because the father had been sentenced to prison following convictions for criminal sexual conduct, respondent did not have his assistance in parenting her children. The court found that there continued to be concerns regarding respondent's ability to supervise her children, and her ability to care for her children's physical and mental health. The

---

[3] The court already had jurisdiction over VC, SC, and JC. However, the supplemental petition included additional allegations against respondent and the father, and it no longer listed NW among the children.

[4] The father's conviction of criminal sexual conduct was unrelated to the sexual-abuse allegations regarding SC.

court also noted that allegations regarding sexual abuse and physical abuse of the children had emerged since the filing of the initial petition. Respondent could not come to terms with the abuse of the children, and had counseled the parties' children to lie about any abuse. The trial court concluded that the children would be emotionally or mentally harmed if returned to respondent's care.

The court also found that termination of respondent's parental rights was in the best interests of the children. Accordingly, the trial court entered an order terminating respondent's parental rights to the children.

This appeal followed.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court did clearly err when it determined that petitioner presented clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j). We disagree.

Regarding MCL 712A.19b(3)(c)(*i*), respondent argues that the conditions that led to the adjudication were unrelated to the allegations of sexual abuse of JC and SC, and the evidence presented regarding the allegations of sexual abuse by the father was inadmissible. Respondent does not challenge the trial court's other findings related to this statutory ground on appeal. While we agree that the trial court erred by failing to hold a tender-years hearing to determine whether the children's statements contained adequate indicia of trustworthiness, the error was harmless because petitioner presented clear and convincing, legally admissible evidence supporting termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710. This Court must give "due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 629; 853 NW2d 459 (2014) (quotation marks and citation omitted). However, decisions regarding the admission of evidence that involve preliminary questions of law are reviewed de novo. *Id*. at 629-630.

A trial court may terminate a parent's rights under MCL 712A.19b(3)(c)(*i*) if "182 or more days have elapsed since the issuance of an initial dispositional order," and the court finds, by clear and convincing evidence, that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." In other words, "[t]his statutory ground exists when the conditions

that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App at 710 (quotation marks, citation, and alteration omitted).

"[C]hild protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). While the rules of evidence apply to the proceedings at the adjudication, the rules of evidence do not apply during the dispositional phase. *Id*. at 406. When termination of parental rights is not being sought at the initial dispositional hearing or on the basis of circumstances that are new or different from those that led the court to originally take jurisdiction, "[t]he Michigan Rules of Evidence do not apply, other than those with respect to privileges" and "all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value." MCR 3.977(H)(2). However, if "termination is sought on the basis of grounds new or different from those that led the court to assert jurisdiction over the children, the grounds for termination must be established by legally admissible evidence." *In re Jenks*, 281 Mich App 514, 516; 760 NW2d 297 (2008), citing MCR 3.977(F)(1)(b).

Respondent argues that the trial court erred by finding statutory grounds to terminate her parental rights under MCL 712A.19(b)(c)(*i*) because the court considered inadmissible evidence concerning allegations that JC and SC were sexually abused by the father. Because JC and SC did not testify and there was no hearing held as required by MCR 3.972(C)(2), respondent argues that the trial court clearly erred by terminating her rights under this statutory ground.

MCR 3.972(C)(2) provides, in relevant part:

Any statement made by a child under 10 years of age or an incapacitated individual under 18 years of age with a developmental disability as defined in MCL 330.1100a(26) regarding an act of child abuse, child neglect, sexual abuse, or sexual exploitation, as defined in MCL 722.622(g), (k), (z), or (aa), performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.

(a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. This statement may be received by the court in lieu of or in addition to the child's testimony.

Respondent does not identify the allegedly improper testimony elicited at the termination hearing. Rather, respondent only identifies prior reports and testimony admitted during the dispositional phase of the proceedings. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine v Jaber*, 327 Mich App 514, 519-520; 934 NW2d 64 (2019) (citation omitted). Therefore, respondent has abandoned this issue.

Nonetheless, at the termination hearing, there was testimony about the sexual abuse allegations and statements made by JC and SC concerning those allegations, and it is undisputed that JC and SC were both under 10 years old at the time of the hearing. Respondent did not object to the allegedly improper testimony or evidence. Moreover, respondent's counsel explicitly asked witnesses about the children's statements. Respondent's counsel also addressed the sexual abuse allegations during closing arguments, recognizing that the DHHS had substantiated at least one of the children's allegations against the father. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) ("Respondent may not assign as error on appeal something that she [or he] deemed proper in the lower court because allowing [them] to do so would permit respondent to harbor error as an appellate parachute."). Further, the trial court took judicial notice of the court file that contained information concerning the allegations. See *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010).

Regardless, based on the record, no hearing was held to determine whether the children's statements had an "adequate indicia of trustworthiness" as required by MCR 3.927(C)(2)(a). Therefore, to the extent witnesses testified about the children's statements concerning the sexual abuse allegations at the termination hearing, the trial court abused its discretion by admitting such evidence. However, this evidentiary error does not require reversal because petitioner presented clear and convincing, legally admissible evidence to support a finding that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(c)(*i*). See *In re Utrera*, 281 Mich App 1, 14, 21; 761 NW2d 253 (2008) (holding that, despite the improper hearsay evidence admitted by the court, reversal was not required because "there was sufficient clear and convincing, legally admissible evidence to support the trial court's decision to terminate [the] respondent's parental rights"). Additionally, although the court noted that allegations of sexual abuse came to light after the initial petition was filed, the court predominantly found that the conditions that continued to exist were concerns regarding respondent's ability to care for and supervise the children and housing concerns. Further, the court's statement that respondent was not able to come to terms with the allegations of sexual and physical abuse by the children was supportive of its finding that the children would be emotionally or mentally harmed if returned to respondent's care.

The trial court entered an order of disposition in August 2018, and the termination hearing began in March 2022. Therefore, far more than 182 days had passed since the initial dispositional order was entered by the court. The conditions leading to the children's removal included improper supervision, respondent's ability to supervise her children, and unsafe housing. Respondent was ordered by the court to comply with and benefit from the case service plan. Respondent was required to find and maintain appropriate housing, and participate in Supportive Visitation Program and "Nurturing Parent/Nurturing Family" parenting education, and complete a psychological evaluation.

In finding clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), the trial court found that there continued to be concerns regarding respondent's ability to care for, both "physical care" and "their mental health," and supervise the children. The court also found that respondent continued to have issues regarding housing and her finances. Noting that the DHHS had been involved with the family since 2015, and had provided services to respondent since that time, the court found that there was no reasonable likelihood that reunification could occur within a reasonable amount of time considering the age of the children.

On appeal, respondent appears to argue that the trial court erred by finding that housing and respondent's parenting skills and capacity to supervise her children remained a barrier to reunification. We disagree.

At the time of the termination hearing, respondent lived with her ex-husband, David White (hereinafter, "White"). Ms. Harris testified that White's home was not appropriate for the children. There were not enough bedrooms and respondent had failed to follow a CPS safety plan. Although respondent argues that White's home was appropriate for her children, respondent stated that she only planned to reside with White for the short-term. Additionally, respondent lived at White's house when the children were initially removed from her care. The children were removed because respondent was found alone with the children, which violated the safety plan. Thus, respondent's living arrangements were unchanged from the time at which her children were initially removed from her care. Moreover, the main concern was respondent's inability to care for and supervise the children.

A psychological evaluation completed by Dr. Paul Kitchen, indicated that respondent had "extreme emotional immaturity" and "limited intellectual capacity". This suggested that she would have difficulty "coping with the demands of daily life and will become easily overwhelmed and possibly manipulated by others." Dr. Kitchen was concerned that respondent's lack of parenting skills, emotional immaturity, and intellectual limitations affected her ability to provide care for her children. Ms. Boshoven, who provided therapy and counseling sessions to respondent for approximately one year, agreed with Dr. Kitchen's concerns. Ms. Boshoven testified that, although respondent attended all of the therapeutic sessions, she failed to rebuild an emotional connection with her children. Ms. Boshoven was unable to identify additional services that would assist respondent in repairing the relationship with her children. Ms. Boshoven testified that respondent continued to have issues with emotional immaturity, was defensive when confronted with criticism and feedback, and was generally distrustful of the process of reunification. Ms. Boshoven was also concerned that respondent would not seek help when necessary if the children were returned to respondent's care, particularly in light of the children's emotional trauma and other needs that required professional treatment.

Although respondent made some progress in parenting education, a parent-education supervisor testified that respondent continued to have difficulty retaining information and consistently applying parenting skills. A "family liaison," who provided services to the family from 2015 to 2017, 2018 to 2020, and 2021 until the time of the hearing, testified that improper supervision and respondent's ability to care for the children continued to be a concern even after services were provided. At the time of the termination hearing, respondent had not been offered unsupervised visits because there continued to be concerns that respondent could not safely provide care and supervision to her children independently. Ms. Harris testified that respondent could not independently care for the children and that there were no additional services that could be offered. Although respondent participated in services, Ms. Harris testified, respondent did not benefit from them. Further, because the father was convicted of criminal sexual conduct and is unable to assist respondent with supervising the children, respondent's issues with poor supervision and her inability to provide care for her children are significant. Additionally, JC and SC both expressed fear about returning to respondent's care and indicated that they did not feel safe with respondent. Moreover, respondent admitted that JC and SC did not trust her and that it would be difficult if they were returned to her care.

Although respondent participated in services, "mere participation is not the same as overcoming the barriers in place." *In re Sanborn*, 337 Mich App 252, 274; 976 NW2d 44 (2021). Despite completing parenting education and participating in counseling, respondent failed to show that she benefited. Therefore, the trial court did not clearly err when it found that the conditions that led to adjudication, including respondent's issues with improper supervision and improper housing, continued to exist at the time of the termination hearing. Further, given the more than three years after the court issued an order of disposition in August 2018, there was no reasonable likelihood that respondent would be able to rectify these conditions within a reasonable time given her children's ages. Thus, even when setting aside the sexual-abuse allegations against the father, the court did not clearly err in determining that a statutory ground for the termination of respondent's parental rights existed under MCL 712A.19b(3)(c)(*i*). Having concluded that the trial court properly terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), we need not determine whether termination under other statutory grounds was proper. See *In re Sanborn*, 337 Mich App at 273 ("If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights.").[5]

## III. REASONABLE EFFORTS

Respondent argues that the trial court clearly erred by finding that the DHHS made reasonable efforts to prevent the removal of respondent's children and to reunify the family. We disagree.

"We review for clear error a trial court's decision regarding reasonable efforts." *In re Sanborn*, 337 Mich App at 258. "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App at 709-710.

The DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017).[6] "As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. According to MCR 3.965(C)(4), "[r]easonable efforts findings must be made" and "[t]he court must make this determination at the earliest possible time, but no later than 60 days from the date of removal, and must state the factual basis for the determination in the court order."

Respondent argues that the DHHS failed to comply with MCR 3.963(A)(3) and (B)(4) and obtain an ex parte placement order. However, the record does not indicate that the children were removed from respondent's care before a court order was issued. Respondent failed to cite any

---

[5] We note that respondent does not challenge the trial court's finding that termination of her parental rights was in the best interests of the children.

[6] There are certain enumerated exceptions to this rule not relevant here. See MCL 712A.19a(2) and MCL 722.638.

portion of the lower court file that supports her position that the children were removed before a court hearing. Therefore, respondent has abandoned this issue. See *Seifeddine*, 327 Mich App at 519-520. The DHHS was not required to request an ex parte placement order after the children were removed from respondent's care by court order on June 8, 2018.

At the June 8, 2018 preliminary hearing, the court found that reasonable efforts had been made by the DHHS to eliminate the need for the removal of respondent's children, including past and current CPS investigations, law-enforcement involvement, New-Outlook services, Families-First services, psychological evaluations, Early-On services, services provided by Van Buren County Community Mental Health, Life-Focus services, medical examinations, and safety planning. Respondent and White attended a family team meeting on June 5, 2018, and respondent agreed to comply with a voluntary safety plan, which was put into place to avoid removing the children from her care. As part of that safety plan, respondent agreed that she would always have another responsible adult with her to assist her with caring for her children. However, three days later, a caseworker discovered respondent alone with the children, and the petition was filed to remove the children from respondent's care.

Respondent argues that the court clearly erred in finding that the children would be at substantial risk of harm if not removed from her care, asserting that petitioner failed to present any evidence that "anything happened" to the children while solely in her care. We disagree.

Consistent with the allegations in the petition, at the June 8, 2018 hearing, Staffen testified that she received a complaint indicating that SC was found outside unsupervised, and respondent was unaware that SC was outside.[7] In another incident, respondent's children were found unsupervised in Walmart, near the front door, while respondent was located in the back of the store. Therefore, the trial court did not clearly err in finding that the children were placed at substantial risk of harm when they were in the sole care of respondent. Respondent repeatedly failed to supervise her children and placed them in harm's way as a result of her improper supervision. Thankfully, nothing harmful actually transpired.

Next, respondent argues that the DHHS only used reasonable efforts during the first nine months after the children's removal, and that those reasonable efforts ceased after the sexual-abuse allegations against the father were revealed. Respondent further asserts that petitioner created the conditions that damaged her parent-child bond with her children. She argues that the court clearly erred in finding that the DHHS used reasonable efforts to reunify the family. We disagree.

In August 2018, the court found that the DHHS was making reasonable efforts to prevent or eliminate removal of the children from respondent's home, including foster-care services, family team meetings, parenting time, referrals to parenting education classes, transportation assistance, New-Outlook services, and family-reunification funding. At a January 2022 hearing— far more than nine months after the children's removal—the court found that the DHHS had made reasonable efforts to reunify the family, which included providing foster-care case services, family team meetings, parenting time, parenting-education classes, transportation assistance, New-Outlook services, family-reunification funds, referrals to housing resources, and parenting-time

---

[7] We note that respondent admitted to this allegation at the adjudication hearing.

evaluation referrals. In November 2020, DHHS requested the trial court to change the goal from reunification to termination. The trial court denied DHHS's request. As recently as 2022, the DHHS provided respondent with individual counseling, as well therapeutic visitation supervised by Ms. Boshoven. In addition, Harris assisted respondent with submitting applications for housing. VC was enrolled in New-Outlook services until March 2020, which was nearly two years after the children came within the care of the DHHS. Even though Harris asserted that the DHHS would never recommend reunification in July 2021, the DHHS continued to provide services for respondent's benefit. Respondent appears to fault the DHHS for failing to rehabilitate the bond between her and her children. However, the record indicates that despite participating in therapeutic services, she failed to benefit from those services and rebuild an emotional connection with her children. Additionally, respondent does not identify any service that she believes would have benefited her more than the services that were actually provided. See *In re Sanborn*, 337 Mich App at 266 ("When challenging the services offered, [the respondent] must establish that she would have fared better if other services had been offered.").

Finally, respondent cites *In re B and J*, 279 Mich App 12; 756 NW2d 234 (2008), in support of her claim that the DHHS failed to use reasonable efforts to reunify the children with respondent. In *In re B and J*, the children were removed from the care of the respondent-mother and the father on the basis of sexual abuse allegations. *Id*. at 14. The previous year, the DHHS investigated a similar allegation, but it was never substantiated. *Id*. After the trial court took jurisdiction over the children, it ordered the petitioner to create a parent-agency agreement, allow supervised visitation, and provide services to support reunification of the family. *Id*. at 15. However, this Court found that the petitioner made "meager attempts to provide services and made little effort to locate Spanish-speaking assistance for respondents." *Id*. Further, the respondents were detained and reported by the United States Immigrations and Customs Enforcement (ICE) after the petitioner reported to ICE that the respondents were illegally residing in this country. *Id*. The trial court terminated the respondents' parental rights under MCL 712A.19b(3)(g) after finding that the respondents had been deported and were necessarily unable to provide proper care for their children. *Id*. at 17. This Court held that the trial court clearly erred by finding statutory grounds to terminate the respondents' parental rights, and explained that the petitioner "was not entitled to seek termination of respondents' parental rights under § 19b(3)(g) in this case because [the] petitioner, itself, intentionally set out to create that very ground for termination." *Id*. at 19.

The instant case is distinguishable from *In re B and J*. In the instant case, the children were removed from respondent's care for reasons other than sexual-abuse allegations against the father, including respondent's improper supervision and unsuitable housing. Additionally, the DHHS substantiated the sexual-assault allegations against the father as it related to SC. Further, unlike the petitioner in *In re B and J*, the DHHS in the instant case made more than "meager attempts" to provide services to respondent so that she could reunify with her children. These efforts included providing foster-care case services, family team meetings, parenting time, parenting-education classes, transportation assistance, New-Outlook services, family-reunification funds, referrals to housing resources, and a parenting-time evaluation referral. Indeed, petitioner continued to provide respondent with individual counseling and therapeutic-visitation services as recently as 2022. While respondent's bond with her children may have been damaged as a result of the length of time they were removed from her care, the children could not be returned because of respondent's failure to resolve her issues with improper supervision, as well as the continuing police investigation regarding the sexual-abuse allegations against the father. Additionally, the

father was eventually convicted on charges of criminal sexual conduct related to his assault of another individual. The lengthy police investigation slowing the return of the children to respondent's care cannot be said to be analogous to the petitioner's actions in *In re B and J*, where the petitioner reported the respondents to ICE in an effort to have them deported. *Id*. at 15. Accordingly, the trial court did not clearly err in finding that petitioner made reasonable efforts to prevent the removal of respondent's children from her care, nor did it clearly err in finding that petitioner made reasonable efforts to reunify the children with respondent following their removal from her care.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick

-10-