*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re NASH, Minors.

UNPUBLISHED
June 22, 2023

No. 364278
Montcalm Circuit Court
Family Division
LC No. 2019-000919-NA

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

The circuit court terminated respondent-father's parental rights to his two young daughters, KN and HN, based on his failure to provide proper care and custody, failure to rectify the conditions that led to adjudication or that arose after adjudication, and the likelihood of harm to the children if placed in their father's care. Respondent contends that the Department of Health and Human Services (DHHS) did not make reasonable efforts to reunify the family and that the court erred in terminating his parental rights. We discern no error and affirm.

## I. BACKGROUND

Respondent and the children's mother are no strangers to the child protective system. Multiple reports were made to Child Protective Services (CPS) after the couple's first child, KN, was born in June 2018. The family has lived in filthy conditions or been homeless, the parents abused controlled substances, respondent had been physically violent against mother, the children's medical needs had been neglected, and there were reports that the children were physically and sexually abused. The family refused voluntary services in 2018. In June 2019, respondent physically assaulted mother while she was pregnant with HN and holding KN. The record is unclear, but it appears that respondent was placed on probation for another offense, and the court entered a no-contact order due to domestic violence. In April 2020, respondent was arrested at a hotel where he was living with mother and the children. Respondent had been drinking and tested positive for methamphetamine and amphetamines. For violating his probation respondent was imprisoned from April 2020 through September 2021.

The court removed the children from mother's care in October 2020, following a report of serious medical neglect. Respondent subsequently pleaded to grounds supporting jurisdiction over the children. The court ordered respondent to participate in AA/NA, but those services were not

available in the prison due to COVID protocols. Respondent completed parenting packets and worksheets provided by the caseworker. Respondent also earned his GED and participated in trade school classes while incarcerated as ordered in the parent-agency agreement. As the proceedings progressed, respondent also participated in domestic-violence classes. And once they became available, respondent completed a substance-abuse program and participated in AA/NA.

During respondent's incarceration, KN was diagnosed with post-traumatic stress disorder. KN also suffered from seizures. HN had digestive issues that required special feeding techniques. Supervised parenting-time sessions with mother triggered KN and parenting time was suspended as a result. Mother died in a car accident in September 2021.

After respondent's September 2021 prison release, the court ordered additional services. The court also awarded one-hour of supervised parenting time each week. Three-year-old KN immediately regressed. She had bathroom accidents, hit other children, threw shoes, and punched walls. The court suspended respondent's parenting time for KN's safety.

In the months that followed, KN received mental health services and HN received extensive treatment for her ongoing medical concerns. Respondent attended substance-abuse counseling and AA/NA. He continually tested negative for substances. He attended parenting classes and met weekly with Christopher Hunt, a behavioral specialist who worked with KN. Respondent was employed fulltime but had yet to secure appropriate housing. Following a psychological evaluation, the court ordered respondent to participate in anger management and grief counseling, which respondent completed. And by April 2022, respondent had secured suitable housing with his fiancée. Despite this progress, neither the court nor the DHHS suggested therapeutic parenting time for respondent with the children. Hunt asserted that KN would likely require a full year of treatment before parenting time could restart.

By July 2022, respondent had stopped participating in services and communicating with the caseworker. He claimed to have changed jobs but did not provide proof of employment. Respondent was no longer living with his fiancée and had moved in with his cousin. In late April 2022, respondent testified positive for meth and marijuana, leading to a 12-day incarceration. When respondent's parole term ended in May 2022, he refused to participate in further drug screening. Although respondent had shown progress initially, the court ordered the DHHS to file a supplemental petition seeking termination of respondent's parental rights based on this regression. Following a November 2022 termination hearing, the court terminated respondent's parental rights.

Respondent now appeals.

## II. REASONABLE EFFORTS

Although inartfully worded, respondent contends that the DHHS failed to make reasonable efforts to reunify the family, specifically through therapeutic parenting time. As a result, respondent argues, the DHHS could not establish statutory grounds to support termination or that termination was in the children's best interests.

The DHHS

> has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification. MCL 712A.18f(3)(d) (stating that the service plan shall include a "[s]chedule of services to be provided to the parent . . .to facilitate the child's return to his or her home"). [*In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017).]

Challenges to the adequacy of reunification efforts "bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.).

Normally, when a child is placed outside of a parent's home, "the court must permit each parent frequent parenting time with a child . . . unless parenting time, even if supervised, may be harmful to the child." MCR 3.965(C)(7)(a). If the court determines that parenting time, even if supervised, would be harmful, the court may suspend visits. MCL 712A.13a(13). The court "may order the juvenile to have a psychological evaluation or counseling, or both, to determine the appropriateness and the conditions of parenting time." *Id*.

The court suspended parenting time for both parents at different points because it was harmful to young KN. KN received intensive therapy to work through her PTSD, but continued to exhibit significant regression and trauma-based outbursts after visits. From November 2021 through May 2022, respondent met regularly with Hunt to discuss KN's issues. Hunt testified that given the level of trauma KN experienced, parenting time could be resumed only after a year of treatment. Respondent relapsed in his substance abuse and completely stopped participating in services before any parenting time could begin.

The DHHS had sound reasons for delaying therapeutic parenting time. There is no record indication that the court would have ordered the DHHS to file a termination petition based on the absence of a parent-child bond had respondent continued to comply with his case service plan and worked toward therapeutic visits. Respondent's decision to stop participating and his relapse into substance abuse prevented therapeutic parenting time from ever starting. The court did not violate its duty to make reasonable efforts toward reunification.

## III. STATUTORY GROUNDS

Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). The court's termination decision followed the filing of a supplemental petition. When termination is sought in a supplemental petition based on new grounds, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129

(2010). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009).

The circuit court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c), (g), and (j), which provide:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
> >
> > (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The circuit court did not clearly err in finding termination supported under factor (c)(*i*) and (*ii*). One of the conditions that led to adjudication was respondent's substance abuse. In April 2022, respondent relapsed and began using marijuana and meth. Following his May 2022 release from parole, respondent refused to participate in any further drug screens or substance abuse services. Accordingly, there is no evidence that respondent rectified this condition. The inability to provide a safe home was also a continuing concern. Although respondent initially maintained employment and was living in a suitable home with his fiancée, that situation was fleeting. And given respondent's decision to stop participating in services, he could not demonstrate that he

-4-

overcame new issues uncovered during his psychological examination surrounding anger management and grief.

Termination was further supported under factor (g). Respondent was unable to provide proper care and custody for his children for much of the proceedings due to his incarceration. Respondent initially made progress in complying with his court-ordered service plan, but then stopped all participation in the spring of 2022. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Absent continuing services for substance abuse and psychological needs, and without addressing the trauma experienced by his children, respondent could not demonstrate that he would be able to provide proper care and custody for KN and HN in a reasonable time.

Finally, termination was also supported under factor (j). KN was emotionally fragile and both children have significant medical needs. Respondent initially worked to understand KN's special needs. But respondent failed to comprehend how his absence during his incarceration could have played a role in KN's trauma. As respondent stopped complying with his parent-agency agreement before KN was ready for therapeutic parenting time, there remained a reasonable likelihood of harm to KN if returned to respondent's care. Respondent was similarly unprepared to attend to HN's medical needs.

## IV. BEST INTERESTS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the court's factual findings in this regard for clear error. *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003).

When determining whether termination is in the best interests of a child, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Factors relevant to the best-interest determination include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. "[T]he likelihood that the child could be returned to her parents' home within the foreseeable future, if at all," is also relevant. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015) (quotation marks and citation omitted).

Respondent had a history of domestic violence against the children's mother in the children's presence. He also had a history of abusing substances while his children were in his care. Although respondent initially benefitted from services, he stopped participating in spring 2022, relapsed, and began abusing marijuana and meth. Further, respondent initially demonstrated an understanding that KN was emotionally fragile and required intensive treatment before

parenting time could restart. Frustrated by the passage of time, respondent resorted to old habits and stopped meeting with Hunt to work toward therapeutic parenting time.

Ultimately, because of his incarceration, respondent had no bond with his children. Given KN's severe trauma, significant effort would be required to restore that bond. Respondent initially complied with services, but eventually wearied of his efforts. As a result of respondent's own actions and inactions, he never reached a point where he could rebuild the parent-child bond and safely parent his children. There was little likelihood that the children could return to their father's home in the foreseeable future. The children were in a loving foster home with caregivers who understood their needs and wished to adopt. On this record, the court did not err in finding termination to be in the children's best interests.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado